**In re the Marriage of John L. McMULLIN, Petitioner/Appellant,**

v.

**Jacqueline K. McMULLIN, Respondent/Respondent.**

No. 67889.

Missouri Court of Appeals, Eastern District, Division Two.

May 21, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 26, 1996.

Application to Transfer Denied Aug. 20, 1996.

John A. Turcotte, Jr., Diekemper, Hammond & Schinners, Clayton, for appellant.

Charles P. Todt, Kimberly J. Bettisworth, Charles P. Todt & Associates, Clayton, for respondent.

DOWD, Judge.

Husband appeals from those portions of the dissolution decree finding the parties' "Pre–Marriage Agreement" ("Agreement") unconscionable and unenforceable and awarding Wife maintenance and attorneys' fees. We affirm in part and reverse in part.

The parties married in the spring of 1984, and Husband filed for dissolution seven years later. On May 25, 1984, the day before the marriage was to take place, Wife was presented with a revised form of the Agreement prepared and handwritten by Husband, an attorney. Husband had changed the Agreement in response to Wife's concern for the welfare of her children from a previous union. Both parties signed the Agreement.

The Agreement provided, *inter alia*, the following in the event of divorce: 1) each party waived any right to maintenance beyond the Agreement itself;[1] 2) the Agreement disposed of the parties' separate and marital property; and 3) Husband agreed to adopt, if possible, Wife's children, and to provide each an undergraduate education at a school of his choice.

In his first point on appeal, Husband asserts the trial court erred in finding the Agreement unconscionable and unenforceable for two reasons: 1) Wife was barred on grounds of equitable estoppel from challenging it; and 2) Husband adequately disclosed his property.

█ In a dissolution proceeding, we must affirm the trial court's decree unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Mehra v. Mehra*, 819 S.W.2d 351, 353 (Mo. banc 1991).

█ The terms of an antenuptial or separation agreement are binding on the trial court *unless* the trial court finds the agreement unconscionable. *See* § 452.325(2), RSMo 1994; *Ferry v. Ferry*, 586 S.W.2d 782, 786 (Mo.App.1979). A separation agreement is unconscionable when the "inequality [is] so strong, gross, and manifest that it must be impossible to state it to one with common sense without producing an exclamation at the inequality of it." *Peirick v. Peirick*, 641 S.W.2d 195, 197 (Mo.App.1982) (citing *Carter v. Boone County Trust Co.*, 338 Mo. 629, 92 S.W.2d 647, 658 (1935)).[2] Additionally, antenuptial agreements will not be enforced unless they are entered into "freely, fairly, knowingly, understandingly and in good faith

---

1. The Agreement provided, for example, that in the event of a dissolution Wife would be awarded $10,000 for each year the parties were married to each other—not to exceed $30,000.

2. The unconscionability analysis has also been defined as the "protection against onesidedness, oppression or unfair surprise." *Ferry*, 586 S.W.2d at 786.

and with full disclosure." *Whitenton v. Whitenton,* 659 S.W.2d 542, 547 (Mo.App.1983).

■ Here, the trial court found the Agreement unconscionable because it attempted to bar Wife from her rights to marital property. Husband conceded, as found by the trial court, that such an attempt to have Wife waive her interest in all marital property was unenforceable. Therefore, the record supports the trial court's determination that the Agreement was so one-sided that it was unconscionable. *See, e.g., Ferry,* 586 S.W.2d at 786.

■ The trial court also found the Agreement did not satisfy the "full disclosure" requirements. "Full disclosure" requires both parties to reveal the nature and extent of each other's property so that each spouse may make a meaningful decision to waive all or part of those rights. *See In re Marriage of Lewis,* 808 S.W.2d 919, 923 (Mo.App.1991). "In order to make an informed decision, a spouse should be substantially advised of the other spouse's property or have knowledge of those facts." *Id.* The sufficiency of the disclosure or equivalent knowledge is dependent upon the circumstances of each case. *Id.*

■ The Agreement listed Husband's assets as follows:

> The property awarded to [Husband] shall include . . . all right in [sic] interests in any retirement plans, his law firm, the farm he owned before the marriage[,] and companies known as Tempo Travel and Meridian Enterprises. . . . He shall also get any real property (including any home) the parties own.

Although Husband revealed all of his property in the Agreement, he failed to place a value on any of these assets. *See id.* The Agreement did not indicate whether any of the real estate was encumbered, whether any equity existed, or any other information regarding the properties. *See id.* Finally, the trial court found "no credible evidence [demonstrated] Wife had other knowledge of Husband's property." Furthermore, Wife was not given enough time between the presentation of the final draft and the wedding to reasonably consider whether she should seek legal advice prior to signing. *See Whitenton,* 659 S.W.2d at 547. Therefore, under these circumstances, the trial court did not err in finding the Agreement failed to satisfy the further requirements of "full disclosure" necessary to create an enforceable separation agreement.

■ Nevertheless, Husband argues Wife is estopped from challenging the validity of the Agreement. Husband emphasizes that he fulfilled his obligations under the Agreement. Husband adopted all of Wife's children from her previous marriage, and he supported those children that continued with their undergraduate education—and even post-graduate work. Husband cites *Dubail v. Medical West Building Corp.,* 372 S.W.2d 128, 132 (Mo.1963), for the general rule that "[i]t is well settled in contract law that 'by accepting the benefits a person may be estopped from questioning the existence, validity and effect of a contract.'" Husband failed, however, to include an important exception to this general rule: "[W]here the contract is void as against public policy or against an express mandate of the law, a person who has accepted a benefit thereunder will not be estopped to defend against the contract when it is sought to be enforced against him." 31 C.J.S. Estoppel § 110(2), pp. 564–69; accord *Miller v. Bowen Coal & Mining Co.,* 40 S.W.2d 485, 490 (Mo.App. 1931).

■ Where a prenuptial or separation agreement is found unconscionable, the court is under no duty to estop a party, who has accepted a benefit under the agreement, from challenging its validity. *See Miller,* 40 S.W.2d at 490. We find no abuse of discretion in allowing Wife to challenge the Agreement. Point denied.

In his second point on appeal, Husband asserts the trial court abused its discretion by ordering him to pay Wife $9,315 per month in maintenance subject to modification. We agree.

■ A trial court is vested with broad discretion in granting maintenance within a dissolution decree. *Vehlewald v. Vehlewald,* 853 S.W.2d 944, 953 (Mo.App.E.D.1993) (citation omitted). We will only reverse an award

of maintenance if the trial court abuses its discretion by acting against the weight of the evidence or by erroneously declaring the law. *In re Marriage of Zavadil*, 806 S.W.2d 506, 512 (Mo.App.1991). Unless the amount is patently unwarranted, or is wholly beyond the means of the spouse who pays, interference by this court is inappropriate. *Vehlewald*, 853 S.W.2d at 953.

Before maintenance may be awarded, a trial court must find the spouse seeking such an award 1) lacks sufficient property, including marital property granted to him, to provide for his reasonable needs; and 2) "[i]s unable to support himself through appropriate employment. . . ." *See* § 452.335.1(1), (2), RSMo 1994. In the past, alimony was usually awarded to enable the spouse to live according to her standard of living at the time of the divorce decree. *See Shilkett v. Shilkett*, 285 S.W.2d 67, 71 (Mo.App.1955); *Reeves v. Reeves*, 399 S.W.2d 641, 650 (Mo. App.1966). After passage of the Dissolution Act, however, "reasonable needs" did not automatically equal the standard of living enjoyed during the marriage. *See Brueggemann v. Brueggemann*, 551 S.W.2d 853, 857 (Mo.App.1977); *Zaegel v. Zaegel*, 708 S.W.2d 812, 813 (Mo.App.1986) ("While standard of living during the marriage is evidence of reasonable need it does not automatically establish that level of need."). Standard of living is one of numerous factors to be considered by the trial court. *See* § 452.335.2(1–10), RSMo 1994.

■ Here, the trial court found Wife's reasonable needs to be $8,000 per month after taxes. The trial court took into consideration Wife's responsibility for the marital home she was awarded, subject to a monthly mortgage payment of nearly $2,000 per month. The trial court found Wife had insufficient property to provide for her reasonable needs. The court further found she was unable to support herself as a real estate broker because she was only "capable of

earning $15,000 per year or $1250 per month." The trial court also found Husband's income was sufficient to meet his reasonable needs and Wife's reasonable needs; his monthly income—over the three years prior to the parties dissolution—averaged approximately $24,000 per month. The trial court ordered Husband to pay $9,315 per month as and for periodic maintenance subject to modification.[3]

We find the trial court acted against the weight of the evidence and thus abused its discretion because Wife's testimony and her "Statement of Income and Expenses" do not support a finding that her "reasonable needs" are $8,000 per month.

Husband on appeal does not challenge the trial court's division of either marital or separate property in the decree. The trial court awarded Wife the marital residence with a fair market value of $325,000 subject to a mortgage of $174,000 at the time of trial, which included approximately $74,000 in equity. The court also awarded Wife over $127,000 as her marital share of Husband's pension. Furthermore, at the time Wife met Husband, she was supporting herself and two minor children by working as a secretary earning $1,666 per month. Wife also received $200 per month child support from her second husband.

Furthermore, Wife's testimony revealed that, in the sixteen months before trial, despite a temporary maintenance award of more than $5,000 per month, she incurred over $35,000 in credit card debt. Much of this debt included numerous non-recurring charges unrelated to Wife's reasonable needs; for example, $7,700 for a cash advance to retain counsel; $1,144 for a new refrigerator; $1,795 for a graduation gift; $1,066 for framed prints; and almost $1,000 for dishes. The trial court properly ordered Wife solely responsible for any credit card indebtedness incurred after April 28, 1993.[4] However, by not discounting the monthly

---

3. This amount includes $2,565 per month to cover Wife's anticipated tax burden on a maintenance award of $6,750 per month. Including Wife's anticipated income of $1,250 per month, her total disposable monthly income equals the $8,000 the trial court found as her reasonable needs.

4. Under the terms of the dissolution decree, Husband must pay any credit card or charge account liability incurred prior to April 28, 1993.

minimum payment on the credit card debt that is solely hers, and the other non-recurring expenses she incurred, the trial court, in determining Wife's reasonable needs from her "Statement of Income and Expenses," has in effect ordered Husband to pay debts for which another part of the dissolution decree holds him harmless. This we cannot approve.

Wife asserts the parties' standard of living during the marriage should govern the determination of her "reasonable needs." However, Wife entered the marriage with minimal financial resources, and their union was not "of lengthy duration." *See Brueggemann,* 551 S.W.2d at 857. Also, Wife was not denied an opportunity to develop a career. *See id.* In fact, Wife acquired a profession during the marriage; she became a licensed real estate broker. And the trial court found Wife capable of gainful employment in this profession. Consequently, none of the factors traditionally present to justify an award based upon the standard of living during the marriage existed here. Therefore, we reverse and remand that part of the dissolution decree determining the amount of Wife's maintenance award.

In his third point on appeal, Husband argues the trial court abused its discretion in ordering him to pay two-thirds of Wife's expenses for legal services in this matter totalling approximately $62,000. We disagree.

The award of attorneys' fees is governed by § 452.355, RSMo 1994. A trial court has considerable discretion, after considering all relevant factors, in awarding attorneys' fees. *Beeler v. Beeler,* 820 S.W.2d 657, 661 (Mo.App.1991). Trial courts are experts on the issue of attorneys' fees, and the judge who tries a case is intimately familiar with the work of all counsel involved in the trial. *Plunkett v. Aubuchon,* 793 S.W.2d 554, 560 (Mo.App.1990). Ordering Husband to pay such an amount is not so unreasonable as to indicate a lack of deliberation and shock one's sense of justice. *See Mistler v. Mistler,* 816 S.W.2d 241, 256 (Mo.App.1991). Therefore, the trial court did not abuse its discretion by ordering Husband to pay two-

thirds of Wife's attorneys' fees. Point denied.

The judgment of the trial court is affirmed as to Points I and III and is reversed and remanded as to Point II.

CRAHAN, P.J., and CRANDALL, J., concur.