**Susan S. DARR,**
**Petitioner/Appellant/Cross–Respondent,**

v.

**Donald L. DARR,**
**Respondent/Respondent/Cross–Appellant.**

Nos. 69677, 69678.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 10, 1997.

Application to Transfer Denied
Sept. 30, 1997.

Susan M. Hais, James P. Carmody, Philip E. Adams, Clayton, for Appellant.

Greensberg and Pleban, Burton M. Greenberg, Michael J. Schaller, St. Louis, for respondent.

PUDLOWSKI, Judge.

Susan Darr (Wife) filed a petition for divorce from Donald Darr (Husband) in January 1993. Prior to the marriage, wife and husband had executed an antenuptial agreement (agreement). The trial court found the agreement was a valid contract. Wife appeals, arguing the contract was voidable because husband had failed to disclose all of his assets at the time of the agreement. Because substantial and competent evidence exists to support the trial court's decision that the agreement was valid. Point I is affirmed.

The agreement provided that each party would be responsible for his or her own attorneys' fees. The trial court found this provision was contrary to public policy and declared it null and void. The court further held that the determination of whether the

party is able to pay personal attorney's fees should be at the time of the execution of the agreement. Because the court also failed to make a factual determination concerning wife's financial status at the time the decree was entered, the order voiding the portion of the agreement dealing with attorneys' fees was erroneous and we reverse and remand point II.

## I. Background

In reviewing the facts we do so in the light most favorable to the judgment. *Hoelscher v. Simmerock,* 921 S.W.2d 676 (Mo.App. W.D.1996). Wife and husband met in 1989. Over the course of the next year and one-half wife traveled extensively with husband and considered herself his social director. During this time husband provided wife with a $500 per week stipend. Wife did not work.

In January 1991 husband and wife became engaged. The wedding was planned for September 21, 1991. Over the course of the next several months wife suggested, and the two discussed, the possibility of signing an antenuptial agreement. On September 6, 1991, husband gave wife a copy of his proposed antenuptial agreement with a copy of his April 1991 financial statement attached. When wife complained she had difficulty understanding the language of the agreement, husband suggested she obtain an attorney to review the document with her. Acting upon that suggestion wife took the agreement to an attorney whom she had known prior to high school. She also conferred with another lawyer who referred her to Stanley Schechter, an attorney, who ultimately negotiated changes in the draft agreement.

During the week of September 16, 1991, the parties and their respective attorneys met twice to discuss changes with the agreement. Several changes were made and the attorneys decided to meet on September 20 to sign the final agreement. On September 19 husband's attorney faxed wife's attorney a final draft of the agreement.

From the time she received the draft on September 6 until she executed the final agreement wife showed the draft to her stepmother, her therapist, her minister and church counselor. She asked all of them for their opinion. The therapist and minister advised her not to execute the agreement because it, in their opinion, did not adequately provide for her needs.

On September 20, 1991, wife met with her attorney prior to signing the agreement. Wife's attorney advised her not to sign the agreement. Despite this legal advice, wife agreed to sign the agreement and did so on September 20. On September 21, 1991, wife and husband were married.

Within sixteen months of the wedding wife and husband physically separated and on January 29, 1993, wife filed a petition for dissolution of marriage. In her petition wife sought an equitable division of property, maintenance, attorneys' fees and temporary maintenance *pendente lite.* Husband filed an answer and a cross-bill for divorce. In his answer, husband asserted the agreement as an affirmative defense to wife's request for maintenance, the division of the property, temporary maintenance, and attorneys' fees. In particular, husband cited section nine of the agreement.

Section nine addressed the issues of marital property, maintenance, temporary maintenance and attorneys' fees. In the event the marriage failed, section nine provided neither side would pay maintenance or temporary maintenance to the other. Section nine also provided each party would bear his or her own attorney's fees and court costs and that the marital property would be divided as the parties agreed.

The parties submitted the issue of the validity of the agreement to the trial court. The court, after a hearing, found the agreement valid except for paragraph nine's clause that each party bear his or her own attorney's fees. The trial court held wife may be entitled to attorneys' fees, but did not specify the amount. The trial court ordered a hearing "on attorney's fees and the final determination of this matter." From this judgment both parties appeal.

## II. Standard of Review

This case is properly before this court as an appeal from a denial of temporary mainte-

nance *pendente lite.* "The law in Missouri is clear that *pendente lite* orders in domestic cases are appealable." *Buder v. Buder,* 824 S.W.2d 483, 485 (Mo.App.1992); *Cross v. Cross,* 790 S.W.2d 928 (Mo.App.1990). Because the issue of an award of temporary maintenance *pendente lite* depends upon the validity of the antenuptial agreement, we must review the trial court's decision finding the agreement valid. In so reviewing, we must affirm the trial court's determination unless there is no substantial evidence to support the decision, the decision is against the weight of the evidence, or the decision erroneously declares or misapplies the law. *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976).

In reviewing the evidence,[1] we must do so in a light favorable to the trial court's decision. *Hoelscher, supra.* We must give due regard to the trial court's opportunity to judge the credibility of the witnesses and recognize the court may believe or disbelieve all, part or none of the testimony or any witness. *T.B.G. v. C.A.G.,* 772 S.W.2d 653 (Mo. banc 1989). The court may even disbelieve uncontradicted testimony. *Id; In Re Marriage of Lewis,* 808 S.W.2d 919 (Mo.App. S.D.1991). With these guidelines in mind we now turn to wife's appeal.

### III. Wife's Appeal

A. *Whether the trial court's decision denying temporary maintenance pendente lite, having found the agreement valid, was proper.*

The trial court denied wife temporary maintenance *pendente lite* on the grounds that the agreement, which provided that no temporary maintenance would be given by one party to the other, was valid. In her first point on appeal wife argues the trial court improperly determined the agreement was valid and as such the denial of temporary maintenance *pendente lite* was an abuse of discretion. Wife argues the court erred in three ways. First, the weight of the evidence clearly showed husband failed to disclose all of his assets at the time the agreement was signed. As such, the agreement

was invalid and unenforceable. Second, wife argues the weight of the evidence clearly shows the agreement as a whole is unconscionable. Third, the trial court failed to make findings of fact and conclusions of law which were central to the court's determination of the validity of the agreement. We will address each of these in turn.

1. *Whether husband's substantial disclosure of all of his assets was sufficient to find the agreement valid.*

 It is well-settled law in Missouri that an antenuptial agreement contemplating dissolution of the parties' marriage is not against public policy and can be valid. *Lewis,* 808 S.W.2d at 922. The test for its validity is whether the agreement has been "entered into freely, fairly, knowingly, understandingly, and in good faith with full disclosure." *Ferry v. Ferry,* 586 S.W.2d 782, 786 (Mo.App.1979). Wife contends husband, by providing a five month old financial statement which contained all but twelve percent (12%) of his monthly income, did not fully disclose his assets in good faith. As a result, wife contends she did not enter into the agreement fully knowing and understanding the nature and extent of husband's property and thus could not make a meaningful decision to waive any rights therein. *Lewis,* 808 S.W.2d at 923, citing *In re Estate of White,* 718 S.W.2d 185, 186–87 (Mo. App.1986). The agreement wife argues is, therefore, voidable. We disagree.

 Full disclosure does not mean absolute, strict disclosure. *Lewis,* 808 S.W.2d at 923. Rather, the purpose behind requiring disclosure is to ensure one party has the ability to make an informed decision about the other party's financial state before signing away any rights he or she may have in that property. *Id; McMullin v. McMullin,* 926 S.W.2d 108 (Mo.App. E.D.1996). An informed decision does not require the one party know the extent of the other party's property down to the very penny. Rather, "[i]n order to make an informed decision, a spouse should be substantially advised of the

---

1. Respondent's motion to strike appellant's exhibits 3, 4, 6, 7 and 30 filed with this court on

January 8, 1997, is sustained. Submission of the exhibits was contrary to Rule 81.16.

other spouse's property or have knowledge of those facts. [cite omitted]." *Lewis*, 808 S.W.2d at 923. In determining whether one party has been substantially advised, we have recognized each case must be examined upon its own particular circumstances: " 'No satisfactory rule as to the sufficiency of disclosure or equivalent knowledge can be formulated in concrete terms for this is ordinarily dependent upon the circumstances of the case.' [cite omitted]." *Id.*

Turning then to the particular circumstances of this case, wife contends husband's failure to include his monthly gross income from his car dealership constituted insufficient disclosure. In examining the totality of the circumstances, we disagree. Husband's April 1991 financial statement indicated his gross monthly income was $75,383.00. Had husband included his gross monthly income from his car dealership, husband would have revealed he made $84,539.00 per month. Thus, husband disclosed 88.2% of his gross monthly income to wife.

Furthermore, wife was husband's social director for the year and one-half preceding their marriage. She was exposed to husband's finances and income. She received a $500 per week stipend and very expensive gifts, some of them worth over $100,000.00. While wife's position and the expensive gifts would not, by themselves, be enough to constitute substantial disclosure, *Id.*, when combined with husband's disclosure of 88.2% of his gross monthly income, we cannot say the trial court's decision finding husband had substantially disclosed his financial status is contrary to the weight of the evidence.

2. *Whether the trial court properly determined the agreement, which provided wife a share of the marital property and was reviewed by wife's attorney, was not unconscionable.*

In her second sub-point of her first issue on appeal, wife argues the trial court erred in not finding the agreement unconscionable. The weight of the evidence, wife argues, clearly shows the agreement was unconscionable. We disagree.

■ In *McMullin* we recognized that if the requirement for full disclosure has been met, "[t]he terms of an antenuptial or separation agreement are binding on the trial court *unless* the trial court finds the agreement unconscionable." *McMullin*, 926 S.W.2d at 110. The antenuptial agreement is unconscionable when "the inequality [is] so strong, gross, and manifest that it must be impossible to state it to one with common sense without producing an exclamation at the inequality of it." *Id.* In finding the antenuptial agreement unconscionable, the *McMullin* court pointed to the agreement's exclusion of wife's right to marital property as well as the wife's inability to consult an attorney before signing the agreement as evidence the agreement was unconscionable. *McMullin*, 926 S.W.2d at 111.

■ In the instant case the agreement provided wife with a share of the marital property. Furthermore, wife not only had an opportunity to consult with an attorney, her attorney participated in the negotiations of the final agreement. Wife also spoke with several friends and expressed her concern about the agreement. Finally, wife's attorney specifically advised wife not to sign the agreement. Despite this legal advice wife signed the agreement anyway. In the presence of this evidence the trial court's decision finding the agreement was not unconscionable is supported by substantial evidence.

3. *The trial court failed to make findings of fact and conclusions of law.*

■ In the final sub-point of her first point on appeal, wife argues the trial court failed to make findings of fact and conclusions of law as she requested. Such a failure, wife argues, impedes this court's ability to review the trial court's decision finding the agreement valid. We disagree.

Where the failure to make findings of fact and conclusions of law does not materially impair our ability to review the trial court's order, such failure is not reversible error. *Buder*, 824 S.W.2d at 485. We consider all factual issues as having been found in accordance with the result reached. *Id*; Rule 73.01(a)(3). In the instant case, the trial court's failure does not materially impair our

ability to review its determination of the validity of the agreement. Wife's first point is denied in whole.

Because her remaining points on appeal depend on finding the agreement invalid, wife's remaining points are denied.

### IV. Husband's Cross Appeal

■ In his sole point on appeal husband contends the trial court erred in holding that a provision in a prenuptial agreement, which precludes effective assistance of counsel for one spouse in the event of a contested divorce is void as against public policy.

In reviewing the court's order we find the court held there is nothing inconsistent with public policy in a prenuptial agreement that provides for a husband and wife to pay their respective attorney's fees. However, the court concluded that when the facts and circumstances "at the *execution of the agreement* demonstrate that one party is unable to pay reasonable attorney's fees the waiver is void."

■ The general rule in awarding attorney's fees in Missouri is that each party bears his or her own litigation expenses. *Kovacs v. Kovacs*, 869 S.W.2d 789 (Mo.App. W.D.1994). In order to deviate from this general rule, "very unusual circumstances" must exist. *Id.* We observe in the instant action an agreement exists providing that each party agreed to pay their own legal fees, thus acknowledging the application of the general rule. Such provision "... may not be lightly brushed aside." *McQuate v. White*, 389 S.W.2d 206, 212 (Mo.1965). "The financial inability to pay for an attorney, and thus the inability to acquire adequate, legal representation, may constitute a very unusual circumstance." *Lyles v. Lyles*, 710 S.W.2d 440, 444 (Mo.App.1986). In order to determine whether a party has such a condition, it is necessary to examine the complaining party's financial resources as they exist at the time of the dissolution. In fact, where the trial court considers awarding reasonable attorney's fees, this court mandates the trial court inquire into each party's financial status. *See Rupnik v. Rupnik*, 891 S.W.2d 548, 549 (Mo.App. E.D.1995).

The question presented before this court is the per se ruling of the trial court which found that a clause which waives attorney's fees is against public policy when the facts and circumstances at the time of the execution of the agreement manifest one party would be unable to pay reasonable attorney's fees in the event of a later contested divorce.

Wife understood that she waived her right to attorney's fees. However, public policy and case law provide the clause be fair and reasonable. Therefore if the court, after hearing, finds this clause to be unfair and unreasonable, it must make its decision based upon the economic facts and circumstances at the time of the dissolution and should not consider the economic station of the parties at the time of the execution of the agreement. Economic conditions may have changed for better or worse since the execution of the waiver.

Therefore, we find the trial court erred in its identity of the time at which the facts and circumstances determine whether the waiver clause is voidable.

We affirm the judgment of the validity of agreement and remand for further proceedings in accordance with this opinion.

CRANE, P.J., and GERALD M. SMITH, J., concur.