**Susan Kay KLOCKOW, Respondent,**

v.

**Daniel Edward KLOCKOW, Appellant.**

**No. WD 54899.**

Missouri Court of Appeals,
Western District.

Submitted July 7, 1998.

Decided Oct. 13, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 24, 1998.

Carla G. Holste, Jefferson City, for appellant.

Marilyn R. Gaeth, Columbia, for respondent.

Before SMART, P.J., and ELLIS and HOWARD, JJ.

PER CURIAM.

Daniel Edward Klockow ("Husband") appeals the judgment of the trial court dissolving his marriage to Susan Kay Klockow ("Wife"). Husband challenges the division of property, the determination of child support, and the custody arrangements made by the trial court. The judgment is affirmed.

## Factual Background

The parties were married on July 30, 1983. Husband owns a geotechnical engineering firm, D.E. Klockow & Associates ("DEKA").

Shortly before the parties were married, they entered into an antenuptial agreement. Portions of that agreement relevant to the issues on appeal are set out in "Appendix A." Daniel Simon, the attorney Husband consulted at the time of the marriage, drew up the antenuptial agreement and a declaration of trust naming Husband as trustee. Mr. Simon wanted Husband to incorporate the business, but Husband chose not to do so. The trust was an attempt by Mr. Simon to duplicate the effects of a corporation, designed to own the real estate of the business and develop an office building on the real estate. The trust would then lease the real estate to Husband, doing business as DEKA.[1] The trust was also designed to receive the accounts receivable accrued before the marriage. The trust would collect the accounts receivable and loan them to the business. Mr. Simon, not comfortable with using this form of business, warned Husband that Husband's personal income would be considered marital income. He explained the importance of not commingling marital property with trust assets. It was not intended that Husband would freely transfer funds from the business to the trust.[2]

After the marriage, Husband chose to use the trust account, an interest bearing account, primarily as a savings account for the business. The business account was used to pay the bills from the business. There is no correlation between the monies the trust transferred to the business account and the monies used to make purchases from the business accounts. Moreover, business income was deposited directly into the trust account. Business income was used to make mortgage payments on real estate and to pay for labor and materials associated with the construction of a new office building on the real estate. The value of the trust in 1984 was $162,800.00. By the time of the trial, the value of the trust was $365,210.00, an increase of $202,410.00.

Two children were born of the marriage, Sara, born October 8, 1986, and Jessica, born November 3, 1987. Wife was the primary caretaker of the children, providing for their day-to-day needs. Wife went back to work in 1995 and, at the time of the trial, was working as a secretary at Boone County National Bank earning $7.50 per hour.

In April 1995, shortly after Wife returned to work, Husband began to act in ways that Wife described as "strange." He claimed that someone had broken into his office. He also began to suspect that Wife was involved in adultery. Husband began checking the mileage on the couple's van, the position of the telephone cord and the caller identification box on the telephone. He claimed to have seen suspicious footprints in the yard and fingerprints in the house. He set up two sound-activated listening devices in the house. After the couple separated, Husband began following Wife. He investigated people in her neighborhood. Husband hired a private investigator to do a surveillance on Wife.

Wife denied adultery. She testified that she was afraid of Husband and that he was acting very paranoid. During the couple's separation, Wife and Husband were able to communicate about the children, although

1. An "Agreement to Construct and Equip Premises" and a lease, dated June 1, 1984, was drawn up for this purpose. Rent of $8,520.00 per year ($710 per month) was established in the lease. Husband testified that a payment of $710.00 per month was never made from the business to the trust.

2. Mr. Simon strongly warned Husband that he had to follow these arrangements. He sent Husband a letter, dated May 29, 1984, containing the following:

You indicated to me that you were using revenues from the business to build the building. Frankly, that was not contemplated by the antenuptial agreement or the lease. The rent, to be paid by the business to the trust, was to be sufficient to allow the improvements to be constructed, with the costs to be amortized over the term of the lease. In other words, the trust (not the business), was to pay for the construction of the building. To the extent that money of the business is used to pay for the building, arguably, the terms of the antenuptial agreement have not been complied with. We want to religiously follow the terms of that antenuptial agreement. I would, therefore, strongly suggest that you increase the amount of the loan, to the point where the building can be entirely paid for by the trust (out of the trust assets or the loan, as required). If necessary, we can increase the rent payments under the lease. Please call me so that we can discuss these matters.

such communication was strained. Wife testified that at one point, when the girls visited Husband for five nights over Christmas, they had not bathed or washed their hair during the entire time. Wife did not believe that long periods of time with Husband were beneficial for the children because they "seem to have gotten upset or not been as well taken care of as I think they should have." Wife was not comfortable with Husband's mental stability. At one point Husband asked Wife if she thought he was going crazy.

During the dissolution proceedings, a guardian ad litem was appointed at Husband's request. The guardian ad litem suggested that joint legal custody be awarded, with primary physical custody to Wife. The guardian ad litem found that the girls were bright and articulate. Both girls preferred to live with their Mother and visit their Father.

After hearings on May 13, 1997 and July 16, 1997, the trial court dissolved the marriage. The court found that Wife had a monthly gross income of $1,340.00 and that Husband had a monthly gross income of $9,002.00. Wife was awarded child support in the amount of $1,479.00 per month. Joint legal custody of the children was awarded. Wife was awarded sole physical custody. Husband was given visitation on alternate weekends, each Wednesday after school, three two-week periods during the summer, alternating holidays, spring break, and one-half of Christmas break. The trial court divided the marital and separate property as follows:

| WIFE | VALUE | HUSBAND | VALUE |
| --- | --- | --- | --- |
| Equity in Home | $47,000.00 | Bank Account | $3,297.00 |
| Bank Account | $6,655.00 | Bank Account | $968.00 |
| Bank Account | $2,101.00 | Life Insurance | $7,487.00 |
| Bank Account | $695.00 | Motorcycle | $900.00 |
| IRA CD's | $71,244.00 | Outboard Boat | $2,000.00 |
| IRA CD's | $5,401.00 | Outboard Motor | $1,500.00 |
| 1987 Van | $2,400.00 | Boat Trailer | $1,500.00 |
| Treasury Note | $6,045.00 | Gun | $1,000.00 |
| Cash Payment | $37,960.50 | Marital Int. DEKA | $202,410.00 |
| NOW Account | $3,000.00 | | |
| TOTAL | $182,501.50 | | $221,062.00 |
| | | | −37,960.50 (to wife) |
| | | | $183,101.50 |

The trial court found that the assets of the trust and the business were both marital and non-marital. It assigned an equity value of $365,210.00 to the assets, with $202,410.00 adjudged to be marital assets and $162,800.00 as non-marital assets. The trial court also divided the debt. Wife was held responsible for the debt on the home ($42,000.00) and Husband for the debt on the business ($113,664.00). Husband appeals.

In Point I, Husband contends that the trial court erred in classifying as marital property: (1) part of the value of the real estate used by Husband's business; (2) an office building constructed on the real estate; and (3) replacement tools and equipment. He claims that the inclusion of this property within the marital estate had a significant impact on the overall distribution of marital property. Wife contends that the assets that Husband claims were his separate property were properly considered marital property because Husband had the burden of showing that the property was separate and he failed to do so. The trial court could, therefore, have found that subsequent income from the business, marital property, was the source of the increase of the value of the trust. Wife also argues that marital assets were used to pay the costs of the construction and mortgage of the office building and that Husband never proved that the tools and equipment in question were replacements for trust assets. Wife further asserts that if the trial court did

err in its classification of property, the overall distribution is equitable and such error does not, therefore, constitute reversible error.

## Standard of Review

Review of this court-tried case is governed by *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). Thus, the judgment of the trial court will be upheld unless it is against the weight of the evidence, it is not supported by substantial evidence, or it erroneously declares or applies the law. *Id.* Section 452.330.1, RSMo Supp.1997 directs that "the court shall set apart to each spouse his nonmarital property and shall divide the marital property in such proportions as the court deems just after considering all relevant factors...." The five factors enumerated in § 452.330 that the court is directed to consider are: (1) the economic circumstances of each spouse; (2) the contribution of each spouse to the procurement of the marital property; (3) the set-off of nonmarital property (4) the parties' conduct during the marriage; and (5) the custodial arrangements for minor children. Marital property, according to § 452.330.2, includes all property acquired by a spouse after the marriage save for certain categories of property, including "[p]roperty excluded by valid written agreement of the parties...."

The trial court is vested with great flexibility in its division of marital property. *Woolridge v. Woolridge,* 915 S.W.2d 372, 376 (Mo.App.1996). There is no set formula concerning the weight given to the factors considered under § 452.330. *Id.* The division need not be equal, but must be fair and equitable given the circumstances of the case. *Dardick v. Dardick,* 670 S.W.2d 865, 869 (Mo. banc 1984). This court will interfere only where the division is so unduly favorable to one party that it constitutes an abuse of discretion. *Id.* We presume that the trial court's division is correct and the party challenging it bears the burden of overcoming that presumption. *Knapp v. Knapp,* 874 S.W.2d 520, 524 (Mo.App.1994). That one party is awarded a higher percentage of marital assets does not *per se* constitute an abuse of the trial court's discretion. *Gremaud v. Gremaud,* 860 S.W.2d 354, 356 (Mo.App. 1993).

We defer to the trial court's superior ability to view the witnesses and determine credibility; the court is free to believe or disbelieve all, part or none of the testimony given by any of the witnesses. *Price v. Price,* 921 S.W.2d 668, 671 (Mo.App.1996). Consequently, we accept the evidence and inferences favorable to the trial court's ruling and disregard contrary evidence. *Welker v. Welker,* 902 S.W.2d 865, 867 (Mo.App.1995).

Antenuptial agreements are permitted in Missouri. *Darr v. Darr,* 950 S.W.2d 867, 870 (Mo.App.1997). They will be upheld unless found to be unconscionable. *Nedblake v. Nedblake,* 682 S.W.2d 852, 854 (Mo.App. 1984).

## Classification of Husband's Business

Husband contends that the trial court erred in not setting the entire value of the real estate he owned prior to the marriage as his non-marital property. The real estate was appraised at $109,000.00 prior to trial, and Husband estimates that the cost to construct an office on the real estate was approximately $60,000.00 to $65,000.00. He complains that the trial court found that only $162,800.00 of Husband's business was nonmarital. Husband claims that by not awarding him the full value of the real estate, $109,000.00, the trial court disregarded the specific terms of the antenuptial agreement. He reasons that since neither party argued that the agreement was not valid, the trial court should have enforced the valid written agreement of the parties. He further reasons that even in the absence of such an agreement, the property should have been set aside to him as his non-marital property. We do not dispute that there was a valid written agreement between the parties. The enforcement of the antenuptial agreement is not at issue, however. The issue, rather, is the propriety of the trial court's characterization of a part of Husband's business as marital property.

The problem with Husband's position is that he has failed to adduce clear and convincing evidence that the trial court's characterization of property was incorrect. Although Husband went to the trouble of having Wife sign an antenuptial agreement, establishing a trust and drawing up a lease between the business and the trust, he did not utilize the carefully crafted mechanisms set up by his attorney to segregate business assets from personal assets. Although Husband may have intended at the time of the marriage to keep his separate assets segregated, the evidence overwhelmingly shows that Husband commingled personal assets and business assets with trust assets from the beginning of the marriage despite being warned that doing so could defeat the antenuptial agreement.

 Section 452.330.3 sets out the presumption that all property acquired after marriage is marital property. Typically, property that is acquired before the marriage that remains titled in the separate name of its original owner is separate property. *Glenn v. Glenn,* 930 S.W.2d 519, 523 (Mo.App.1996). Recognizing these principles, the trial court set the non-marital interest of Husband in the business as $162,-800.00, the value of DEKA at the time of the marriage. It is the increase in the value of the business over and above $162,800.00 that is at issue. The trial court classified this portion of the property as a marital asset. Our determination of whether the trial court was correct in doing so begins with the question of whether the increase in the value of the business was achieved using marital funds or was attributable to non-marital funds as contemplated by the antenuptial agreement.[3]

Essentially, the question was one of credibility. Husband testified that he made payments from the business account on the building, however, he could not show from bank records where the trust account reimbursed the business for building expenses. There were no checks made payable to the trust for rent from the business. Checks from clients that were given to the business in payment were deposited into the trust account. There was no relationship between the deposits from the business receipts and any rent or expenditures from the trust. Mortgage payments on the building were made from the DEKA account. The trouble, of course, is that income generated by the business, at least in part, was also marital income. Husband's casual approach to bookkeeping resulted in martial assets being expended to support the business. Husband was cautioned that using the trust in this fashion could negate the effect of the antenuptial agreement. Despite the warning, Husband continued this course of action throughout the life of the marriage.

Husband cites *Glenn* for the proposition that "property acquired before the marriage and which remains titled in the name of the original owner is separate property unless the record shows that the owner intended to change the status of the property from separate to marital." *Glenn,* 930 S.W.2d at 523. The trial court did award Husband the value of his separate property before the marriage. It is the increase in the value of that property that is at issue presently.

### Husband had the Burden of Proof

 Husband, as the party claiming that the property in question is non-marital, bears the burden of proving his contention by clear and convincing evidence. *Sprock v. Sprock,* 882 S.W.2d 183, 185 (Mo.App.1994). What that means in this case is that Husband must show, by tracing the money used to pay for the building and other business assets, that they were non-marital. Husband has not been able to make such a showing. On the contrary, Husband's evidence supports the trial court's determination that the increase in the value of the business resulted

---

**3.** Missouri follows the "source of funds rule" in making the determination of whether property should be categorized as marital or non-marital. *Hoffmann v. Hoffmann,* 676 S.W.2d 817, 825 (Mo. banc 1984). Property is considered to be acquired as it is paid for and incremental property values are allocated to either the marital or the non-marital estate accordingly. *Alexander v. Alexander,* 956 S.W.2d 957, 961 (Mo.App.1997).

from the expenditure of marital funds, funds generated by the business. Husband commingled his separate property with marital property and has not provided any evidence by which it can be determined what proportion of the funds were marital and what were separate. The failure to do so results in Husband's failure to meet his burden.

Husband also contends that the trial court erred by not setting aside the value of the office building to him as his separate property. Again, Husband has failed to meet his burden in challenging the trial court's designation of this property as marital property because he has not proven, by clear and convincing evidence, that the property was his separate property. Husband used monies from his business account to pay for labor, materials, supplies and other construction costs associated with the building. Husband relies upon his testimony at trial that he transferred funds from the trust to the business to cover construction costs. The trial court was not required to believe Husband's explanation, especially in view of the fact that the documentary evidence did not show any correlation between payments from the trust to the business account and visa versa. Husband further testified that when the construction loan was converted to a permanent loan, payments were made from the business account.

Husband compares the instant case with *McGilley v. McGilley,* 951 S.W.2d 632 (Mo. App.1997). In *McGilley,* the parties signed an antenuptial agreement containing language purporting to waive their entire rights to their spouses estates. *Id.* at 636. Here, in contrast, the antenuptial agreement at issue is limited to consideration of Husband's separate assets at the time of the marriage. The agreement specifically provides: "Klockow understands and agrees that all of his personal income earned after the marriage of the parties shall be marital property, and that all items, assets and properties acquired with such income, and the products and proceeds thereof, shall be marital property." Wife did not waive any marital rights in the business acquired by the expenditure of marital funds. *McGilley* was also without the added complication of commingled funds. *Id.* at 639.

Husband also argues that the trial court erred by categorizing tools and equipment as marital property because the terms of the antenuptial agreement excluded all replacements and additions to those items in the trust from being marital property. It is true that the antenuptial agreement provided that Wife would have no right or claim to the tools listed in the exhibits attached to the antenuptial agreement, to the products or proceeds from those tools or to any replacements of the tools. However, Husband did not adduce evidence that the tools and equipment described in the agreement were ever sold or replaced. Husband claims that his exhibits show that the funds used to purchase replacement equipment came from the trust. The exhibits to which he directs our attention show nothing of the sort. For example, Exhibit FF is supposed to show that Husband wrote a check from the trust account in January 1991 for a new drilling rig. Exhibit FF is a bank statement showing checks written from the trust account. There is nothing to show what the checks purchased. Similarly, Exhibit AA is supposed to be evidence that Husband wrote a check to replace his computer. Again, Exhibit AA is a bank statement showing that checks were written. It does not show what the checks purchased. The trial court was free to believe or to disbelieve Husband's testimony regarding the acquisition of replacement tools and equipment. This court defers to the trial court's determination as to Husband's credibility.

Husband contends that the trial court's inclusion of business assets in the distribution of marital assets resulted in an inequitable distribution of the marital property. We do not address this contention because, as explained above, Husband did not show by clear and convincing evidence that the assets he sought to exclude were non-marital assets. Our examination of the division of property does not lead to the conclusion that it was inequitable under the circumstances. Point I is denied.

### Depreciation on Equipment

In Point II, Husband contends that the trial court erred by not considering depreciation on business equipment in determining the amount of Husband's child support. He contends that the trial court overestimated the amount of his gross monthly income by adding depreciation back into that income. Wife contends that Form 14 allows the trial court the discretion to exclude depreciation from ordinary and necessary expenses and that by doing so, the trial court did not abuse its discretion.

The trial court made the following finding:

The Court finds that Petitioner is capable of earning One thousand three hundred forty dollars ($1,340.00) gross income per month and that Respondent's gross income is Seven thousand six hundred six hundred sixty-two dollars ($7,662.00) per month for total gross income of Nine thousand two dollars (9,002.00) per month; that the presumed amount of child support as calculated by the Court pursuant to Section 452.340.8 RSMo.1994, Supreme Court Rule 88.01 and Civil Procedure Form 14 is One thousand four hundred ninety-seven dollars ($1,497.00) per month, reasonable work-related child care expenses are One hundred eighty dollars ($180.00) per month and medical insurance for the minor child is Sixty-three dollars ($63.00) for total child care costs of One thousand seven hundred forty dollars ($1,740.00). Said amount is not rebutted as being unjust or inappropriate. The court finds the Respondent is responsible for eighty-five percent (85%) of that amount.

Husband's income was calculated by averaging his annual income from 1990 through 1995. Depreciation was added into the calculation of Husband's annual income. Husband reasons that had the trial court used only one year's tax returns to calculate support, it might not be an abuse of discretion to add back depreciation. Here, the court looked at five years and the depreciation was an extraordinary cost to Husband in the operation of his business. He claims that the depreciation realized by the business was not income

available to him for other purposes. Husband admits that he does not have any case law to support his argument that the addition of depreciation in this case was an abuse of discretion.

■ The procedure to determine child support is established by Rule 88.01 and § 452.340.1, RSMo 1994. *Price,* 921 S.W.2d at 673. Initially, the trial court must calculate the amount of support using Form 14. The "Directions for Completion of Form 14" state: "The court may exclude from ordinary and necessary expenses amounts for depreciation, investment tax credits, and other non-cash reductions of gross receipts. Income, expenses and retained earnings should be reviewed to determine gross income. This amount may differ from a determination of business income for tax purposes." The language of this guideline is permissive rather than mandatory. *See Schubert v. Tolivar,* 905 S.W.2d 924, 929 (Mo.App.1995). We will not disturb the trial court's judgment unless the evidence supporting it is "palpably insufficient." *In re Marriage of Glueck,* 913 S.W.2d 951, 955 (Mo.App.1996).

■ In the instant case, the trial court exercised its discretion by including depreciation in its determination of Husband's gross monthly income. We cannot say that the trial court abused its discretion by so doing. There is sufficient evidence in the record to support the trial court's judgment. Had the trial court averaged Husband's annual income over the last the three years (1993, 1994 and 1995) the result, with depreciation added, would be income of $115,275.00 per year. The same calculation over a period of two years (1994 and 1995) shows an average of $124,967.50. If we were to average data from 1994 and 1995 without the addition of depreciation, the result would be $97,897.50. The trial court's five-year average, with the depreciation added in, yields a figure which is more in keeping historically with Husband's income. Under the circumstances, this seems reasonable.

We decline Husband's invitation to formulate clear guidelines as to when it is appropriate to include depreciation as an ordinary

and necessary business expense. There are too many variables in dissolution cases that would render any such formula meaningless. Form 14 allows the trial court the necessary flexibility to determine a parent's income for the purposes of fixing child support in light of what the court has discovered during proceedings on the matter. We also address Husband's contention that, in the absence of any evidence that the depreciation shown on his tax returns was not proper, it is an abuse of discretion for the trial court to include it in its calculations by reminding Husband that gross income for child support purposes "may differ from a determination of business income for tax purposes." *Id.* at 955–56; *see also Chorum v. Chorum*, 959 S.W.2d 900, 904 (Mo.App.1997). Point II is denied.

## Custody

In his third and final point, Husband complains that the trial court erred by awarding primary physical custody of the children to Wife. He points out that the parties live close to one another and both have participated extensively in the children's lives.

 There is no one rule that can be applied to determine the outcome of a custody case. *Replogle v. Replogle*, 903 S.W.2d 551, 554 (Mo.App.1995). Each case has its own distinctive features and must be reviewed in light of its own unique set of facts. *Id.* We presume that the trial court considered all the evidence and made its award of custody in the best interest of the child. *Hankins v. Hankins*, 920 S.W.2d 182, 187 (Mo.App.1996). This court will not disturb the trial court's ruling unless that ruling can

be considered "clearly against the logic of the circumstances or is arbitrary or unreasonable and we are firmly convinced that the welfare of the child requires some other disposition." *Chorum*, 959 S.W.2d at 903. The trial court enjoys a great deal of discretion in making its determination regarding custody. *Wakili v. Wakili*, 918 S.W.2d 332, 343 (Mo.App. 1996). The court is free to believe or disbelieve all, part or none of the testimony given by any of the witnesses. *Burkhart v. Burkhart*, 876 S.W.2d 675, 678 (Mo.App.1994). Moreover, in our review of this issue we accept as true all evidence and inferences favorable to the decision, discarding all contrary evidence. *Id.* We give greater deference to the trial court's decision in child custody decisions than in other matters. *Leone v. Leone*, 917 S.W.2d 608, 613 (Mo. App.1996).

 Section 452.375.2 directs that the trial court determine custody of children considering all relevant factors, including those listed in that section.[4] Section 452.375.3 sets forth the declaration of the Missouri legislature "that it is the public policy of this state to assure children frequent and meaningful contact with both parents after the parents have separated or dissolved their marriage, and that it is in the public interest to encourage parents to share decision-making rights and responsibilities of child rearing." In order to effectuate this policy, the trial court is directed to consider joint custody prior to making any award of custody. § 452.375(5), RSMo 1994. This section does not create a presumption in favor of joint custody, although it does require that the option be

4. The factors listed in § 452.375.2 are:

(1) The wishes of the child's parents as to his custody; (2) The wishes of a child as to his custodian; (3) The interaction and interrelationship of the child with his parents, his siblings, and any other person who may significantly affect the child's best interests; (4) The child's adjustment to his home, school, and community; (5) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm; (6) The needs of the child for a continuing relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child; (7) The intention of either parent to relocate his residence outside the state; and (8) Which parent is more likely to allow the child frequent and meaningful contact with the other parent.

considered. *Chapman v. Chapman*, 871 S.W.2d 123, 125 (Mo.App.1994).

■ In this case, the trial court awarded joint legal custody of the children to Husband and Wife pursuant to a joint custody plan requiring that the parents consider the best interests of the children, confer on major issues and keep one another informed. There are provisions that provide for modification of visitation and for the possibility of either party's remarriage. Both Husband and Wife share in the decision-making rights and responsibilities in the lives of their children. To this end, the trial court's decision is in accord with the public policy of this state. However, Husband complains that the trial court's decision to award sole physical custody to Wife is inconsistent with the evidence and violates the preference for shared custody. The rationale for an award of joint legal custody has been extended in certain instances to joint physical custody decisions. *See, e.g., Burkhart*, 876 S.W.2d at 679–80; *In re Marriage of Barnes*, 855 S.W.2d 451, 454–55 (Mo.App.1993). There is evidence in this case, however, that supports the trial court's decision to award sole physical custody of the children to Wife.

The guardian ad litem testified that both girls preferred that primary custody be with Wife. Sara desired to see Husband every other weekend and during half of the summer months. Jessica also wished to see Husband every other weekend and for two weeks during the summer. Although both of the children were sad about the divorce, they preferred to stay with Wife and visit Husband. There is also some evidence that Father had begun behaving strangely. Mother testified that she was not completely comfortable with the girls' visitation with Father because she was unsure of his mental stability. Mother did not feel that Father was careful with the children when they were in his care.

Father contends that the trial court failed to consider evidence that showed that Mother would be less likely to allow frequent and meaningful contact with the other parent. In support of this proposition, Father points to a letter that shows he requested an additional week of visitation during the summer of 1997 and Mother denied the request. He also produced copies of school enrollment forms that bore the notation, "Father may not pick up children until further notice." However, the notation had been struck out. Moreover, the record shows that Mother was willing to give Father extra visitation during the summer of 1997 but Father did not like the dates chosen, Mother did, in fact, allow Father time with the children beyond that strictly required. Under the circumstances, we cannot say that the trial court erred by granting mother sole physical custody of the children. Point III is denied.

Judgment is affirmed.

## Appendix A

*RECITAL OF FACTS AND CIRCUM-STANCES:*

This agreement is made in view of the following facts and circumstances:

. . . .

2. Klockow is now, and has for some substantial period of time been, engaged in the business as a consulting geotechnical engineer, and, particularly is now doing business, and has, for some substantial period of time been doing business as D.E. Klockow & Associates, Consulting Geotechnical Engineers, with offices at 5921 Wagon Trail Road, Route 14, Columbia, Missouri.

3. In conducting this business, and in pursuit of this business, Klockow has acquired substantial assets, and a substantial number of items of equipment, all of which are used in connection with such business, and all of which are more fully described on that four page listing, a copy of which is annexed hereto as Exhibit A and is hereby incorporated herein by reference the same as though fully set forth herein. Klockow has also acquired that real estate described on Exhibit B.

4. All of those items of property, which are described on Exhibits A and B hereto, will be owned by Klockow, as of the mar-

riage of the parties. All such items will have been acquired by Klockow prior to such marriage. Such items would not, therefore, be considered to be marital property under the provisions of Section 452.330–2–(4) RSMo. The parties intend, by this Agreement, and pursuant to such section 452.330–2–(4) RSMo., and any additions thereto or replacements therefor, or any substitutions therefor, to enter into an agreement acknowledging that those items of property described on Exhibit A hereto are not marital property, and will not be marital property, and that such items are, and shall remain, Klockow's sole and separate property, so that, in the event of separate maintenance or the dissolution of the marriage of the parties, said items of property will not be marital property. Hackett [Wife] intends to enter into an agreement hereby, to the effect that she shall have no right, interest or claim to those items of property described on Exhibits A and B hereto, or the products or proceeds thereof, or any replacements therefor, in the event of separate maintenance or the dissolution of the marriage of the parties, and to the effect that said items of property shall be the separate estate and property of Klockow.

. . . .

NOW THEREFORE, in consideration of the premises, and of the mutual promises, covenants and agreements of the parties herein contained, the parties hereto, intending to be legally bound, agree as follows:

1. *Property Not Marital Property.* Each of the parties hereto agree with the other that all of those items described on Exhibits A and B, which are annexed hereto and are hereby incorporated herein by reference, together with the products and proceeds of all such items, and each of such items, and any replacements for all such items or any such items, shall not be marital property within the meaning of section 452.330 of the Revised Statutes of the State of Missouri, or any amendments thereto, or replacements therefor. The parties hereto further agree that Hackett

has no right, title, interest or any claim whatsoever with respect to said property, or any of the items of said property, or the products or proceeds thereof, or any replacements therefor, and that said property shall be enjoyed by Klockow alone, and shall be subject to Klockow's sole control, management and disposition as his separate estate and property.

2. *Transfer to Trust.* Each of the parties agrees that Klockow shall be entitled to create an intervivos trust, of which Klockow, or any persons, persons or corporations selected by him, shall be the trustee or trustees, and that Klockow shall be entitled to transfer to such trust all or any portion of those items of property described on Exhibits A and B hereto, and that Klockow shall, after creating such trust, be entitled to cause such trust, or the instrument creating same, to be amended, replaced or revoked, in such fashion as Klockow, in his sole and absolute discretion, shall deem appropriate; provided, however, that the provisions of the instrument creating such trust must provide as follows:

(a) That the assets and properties contained in the trust shall be made available to Klockow, for use in connection with his business as a geotechnical engineer (or to any corporation or entity formed by him to conduct such business), either rent or interest free, or for reasonable interest and reasonable rentals, as Klockow, in the exercise of his reasonable discretion shall deem appropriate;·

. . . .

It is further agreed that any items of property acquired by the trustee or trustees of such trust to replace any of those items described on Exhibits A and B hereto, shall be held by the trustee or trustees of the trust, and shall be deemed to be a part of the products or proceeds of the items of property described on Exhibits A and B hereto, and shall be deemed to be a replacement for such items.

. . . .

4. *Purpose of Trust.* The trust described above is to be established for purposes of

segregating, and keeping separate and apart from the marital property of the parties, those business properties and assets which will be owned by Klockow on the date of the marriage of the parties, and which such business properties and assets would not be marital property as described in section 452.330 RSMo. It is, therefore, agreed that the properties or assets placed in the trust, as described above, and the products and proceeds thereof, and any additions thereto and replacements therefor, shall be the sole and separate estate and property of Klockow, and that said property, products, proceeds, additions and replacements shall not be marital property within the meaning of section 452.330 RSMo., and that said property shall be enjoyed by Klockow alone, and shall be subject to Klockow's sole control, management and disposition, as his separate estate and property. It is, however, agreed that the only property which shall be placed in trust shall be the property described on Exhibits A and B hereto, and the products and proceeds thereof, and the earnings and income therefrom, and the replacements therefor and the additions and improvements thereto. No other property shall be placed in such trust. The trust, and the property placed in the trust shall not be used for any purposes other that those described in this Agreement.

. . . .

7. *Klockow's Personal Income.* Klockow understands and agrees that all of his personal income earned after the marriage of the parties shall be marital property, and that all items, assets and properties acquired with such income, and the products and proceeds thereof, shall be marital property. Hackett, however, understands and agrees that if Klockow were to retain ownership of those items described on Exhibits A and B hereto in his sole name, a certain portion of what would otherwise be Klockow's personal income would reasonably be attributable to the items of property described on Exhibits A and B hereto, and would reasonably be required to main-

tain, repair and replace such items. Hackett, therefore, agrees that Klockow shall be entitled to pay to the trustee or trustees of the trust described above fair and reasonable rates of interest and fair and reasonable rentals for the use of the items described on Exhibits A and B hereto, and the products and proceeds thereof, and the additions thereto and replacements therefor, and that Klockow's personal income may, therefore, be reasonably reduced by the sum of such reasonable rates of interest and reasonable rents. Hackett, therefore, agrees that, so long as the interest paid to the trustee or trustees of the trust are reasonable, and the trust only contains those items described on Exhibits A and B hereto, and/or the products or proceeds thereof, and/or the additions thereto and replacements therefor, and/or the reasonable income derived from same, then all items owned by such trustee or trustees shall be Klockow's sole and separate estate and property, and shall not be marital property within the meaning of section 452.330, and that she shall have no right, title, interest or any claim whatsoever in and to such property.