853 S.W.2d 932 (1993)
In the Matter of J.F.K., a minor.
William and Marilyn RANDLE, Appellants,
v.
S.K., an Incompetent, Respondent.
In the Interest of J.F.K., a minor.
David A. COOK, Ray County Juvenile Officer, Respondent,
v.
William and Marilyn RANDLE, Appellants.
No. 74934.
Supreme Court of Missouri, En Banc.
May 25, 1993.
Leonard K. Breon, Warrensburg, for appellants.
*933 Mary V. Hower, St. Joseph, Stanley M. Thompson, Richmond, Catherine A. Schulte, Independence, for respondents.
LIMBAUGH, Judge.
In these consolidated cases, accepted on transfer from the court of appeals, William and Marilyn Randle appeal the dismissal of their chapter 453 petition to adopt J.F.K., a minor, and the denial of their motion to intervene in a separate chapter 211 proceeding involving the same child. We affirm the dismissal of the adoption petition and affirm the denial of the motion to intervene.

I.
On September 14, 1989, J.F.K., born just a few weeks earlier on June 30, 1989, was removed by the Division of Family Services [DFS] from the home of his natural parents, apparently under an emergency order of protective custody. DFS immediately placed him in the care of William and Marilyn Randle, licensed foster parents. Although the legal file is sparse, it appears that on December 6, 1989, after a hearing on the merits of a petition filed under § 211.031.1, RSMo 1986,[1] the Juvenile Division of the Ray County Circuit Court assumed jurisdiction over J.F.K. upon a finding that he was "dependent and neglected." Legal and physical custody was awarded to DFS, which in turn, continued the placement of the child in the Randles' foster home.
On February 26, 1990, J.F.K's natural mother, suffering from "mild mental retardation," was adjudicated under § 475.010(8), RSMo 1986, to be "totally incapacitated," and her parents, E.B. and W.B., were appointed as her guardians. The mother's parental rights have not been terminated, nor is any termination proceeding pending.
The natural father was convicted of child abuse and on November 7, 1990, his parental rights in J.F.K. were terminated.
The child continued in the care of the Randles throughout the proceedings described above, until November 16, 1990. On that date two events occurred: The Randles filed a separate action in the Juvenile Division of the Ray County Circuit Court for adoption of J.F.K. as their own child, and, immediately thereafter, DFS removed the child from the Randles' home.[2] The Randles then filed an amended petition omitting the allegation that the child was physically in their care and adding a count requesting that custody of the child be transferred back to them. Additionally, they requested termination of the natural mother's parental rights.
At this point, there were two cases affecting J.F.K., both pending in the Juvenile Division of the Ray County Circuit Court, and both proceeding concurrently. The first case was the ongoing child neglect action prosecuted by the juvenile officer under chapter 211 in which the court had assumed jurisdiction of the minor child. The second was the adoption proceeding instituted by the Randles under chapter 453. Complicating this scenario was the fact that two different judges presided over the cases.[3]
On April 12, 1991, the court awarded physical custody of J.F.K. to the natural mother's guardians (the maternal grandparents) in the home they shared with the mother. Legal custody of J.F.K. remained with DFS. Subsequently, on April 17, 1991, the mother's guardians moved to dismiss the Randles' adoption petition on the *934 ground that it would be "inappropriate" for the court to entertain an adoption petition filed under chapter 453 while the underlying child neglect case was pending. That motion was sustained by Judge Robb on April 24, 1991. It is from that dismissal that the Randles raise their first appeal.
In a fallback position, the Randles then moved to intervene in the chapter 211 proceeding and attached to the motion their proposed pleading, a reconstituted petition for the adoption of J.F.K. As prospective adoptive parents, they claimed intervention "as of right" under Rule 52.12(a). Judge Sloan concluded that the Randles lacked standing to intervene and that their proposed petition failed to state a claim on which relief could be granted; therefore, he denied the motion. The Randles' second appeal is from this ruling.

II.
Resolution of the issue in the first appealwhether the juvenile division may entertain a petition for adoption of a minor child filed separately from a pending child neglect case involving the same childturns on the interplay between the adoption statutes set out in chapter 453 and the juvenile laws contained in chapter 211.
The Randles brought their petition for adoption under § 453.010.1, RSMo 1986, which states:
Any person desiring to adopt another person as his child may petition the juvenile division of the circuit court of the county in which the person seeking to adopt resides, or in which the person sought to be adopted may be, for permission to adopt such person as his child.
An obvious prerequisite to any adoption is the consent of the natural parents or the involuntary termination of their parental rights. §§ 453.030, 453.040, RSMo 1986. J.F.K.'s mother has never consented to the adoption of her child, nor, as stated earlier, have her parental rights been terminated.
The Randles argue that 1990 legislative revisions to § 211.447[4] give them the express statutory authority to bring a separate action for the adoption of J.F.K. and the involuntary termination of his natural mother's parental rights. Section 211.447 states in pertinent part:

* * * * * *
2. The juvenile court may terminate the rights of a parent to a child upon a petition filed by the juvenile officer or in adoption cases by a prospective parent, if it finds by clear, cogent and convincing evidence that one or more of the following grounds for termination exists. (emphasis added)

* * * * * *
5. In actions for adoption under chapter 453, RSMo, the court may hear and determine the issues raised in a petition for adoption containing a prayer for termination of parental rights filed with the same effect as a petition permitted under subsection 2 of this section.
Clearly, the legislature has provided two separate means for the involuntary termination of parental rights. The first is a direct proceeding against the natural parent(s) brought by the juvenile officer. The second is a request for termination of parental rights that is incident to an action brought by prospective adoptive parents seeking to adopt a minor child.
There is, however, a qualification of the right of prospective adoptive parents to proceed independently. Section 211.093, RSMo Supp.1992, passed as part of the same bill that included the revisions to § 211.447.2, states:
Any order or judgment entered by the court under authority of this chapter or chapter 210, RSMo, shall, so long as such order or judgment remains in effect, take precedence over any order or judgment concerning the status or custody of a child under age twenty-one entered by a court under authority of chapter 452, *935 453, 454 or 455, RSMo, but only to the extent inconsistent therewith.
This statute precludes the operation of any order affecting the status or custody of a minor child under chapter 453 that is inconsistent with an order entered under chapter 211.
In this case, an order granting custody of J.F.K. to the Randles would be patently inconsistent with the earlier order in the chapter 211 action in which custody of J.F.K. was awarded to the division of family services. Under § 211.093, the award of custody to DFS must "take precedence." The juvenile division has no jurisdiction to proceed on the Randles' action for custody and adoption because the action is preempted by the underlying child neglect case. We hold that Judge Robb, having taken judicial notice of the underlying chapter 211 case involving J.F.K., was correct in dismissing the Randles' petition.

III.
In their second appeal, the Randles, citing Rule 52.12(a), claim a right to intervene in the pending chapter 211 action because the disposition in that case may as a practical matter impede or impair their interest in adopting J.F.K., and further, because their petition for adoption raised significant questions of law and fact that are common to both proceedings. Rule 52.12(a) states:
Upon timely application anyone shall be permitted to intervene in an action:
(1) when a statute of this state confers an unconditional right to intervene; or
(2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
The Randles' proposed application of this rule is dealt with conclusively in the case styled In the Matter of Trapp, 593 S.W.2d 193 (Mo. banc 1980), in which foster parents, who desired to adopt their foster child, sought to intervene in a chapter 211 proceeding brought by the juvenile officer to terminate the parental rights of the natural mother. At issue was whether the foster parents had an "interest" in the pending neglect proceeding as that term is used in the rule. In Trapp we defined the term "interest" as follows:
`Interest,' generally, means a concern which is more than mere curiosity, or academic or sentimental desire. One interested in an action is one who is interested in the outcome or result thereof because he has a legal right which will be directly affected thereby or a legal liability which will be directly enlarged or diminished by the judgment or decree in such action.
Matter of Trapp, supra, at 204, quoting State ex rel. Farmers Mutual Automobile Ins. Co. v. Weber, 364 Mo. 1159, 273 S.W.2d 318 (banc 1954). This Court held that the "interest" expressed by the foster parentsobtaining custody and adopting the minor childwas not the type of interest contemplated under the rule. The foster parents had "no legal right which [would] be directly affected" by the judgment of the juvenile court. Trapp, 593 S.W.2d at 204. Furthermore, the "interest" of the foster parents in obtaining custody and adopting the minor child was different from the "subject of the [chapter 211] action" which was to determine "the current fitness of [the natural mother] to regain custody of her children." Id. See also, In the Interest of D-L-C, 834 S.W.2d 760 (Mo.App.1992); Ruth L. v. State, 830 S.W.2d 528 (Mo.App.1992).
To overcome the holding of Trapp, the Randles rely once again on the 1990 revisions to § 211.447.2 that allow juvenile courts to terminate parental rights on the petition of prospective adoptive parents. Specifically, the Randles argue that the statute creates a right for them to intervene in the chapter 211 child neglect action not only to present their petition for adoption as part of the child neglect case, but also to present evidence of the natural mother's fitness to have custody of the child.
*936 We disagree. The statute allows prospective adoptive parents to petition for the termination of parental rights as part of adoption cases brought under chapter 453. Termination of parental rights can thus be sought on the grounds authorized under § 211.447, but without the involvement of the juvenile officer. However, the ability of the petitioners to invoke the provisions of § 211.447 extends only to adoption cases. There is nothing in the statute that allows the prospective adoptive parents to intervene in the chapter 211 proceeding prosecuted by the juvenile officer.
In the absence of a statutory right to intervene, the rationale of Trapp still applies. The Randles have no legal right that will be affected by the outcome of the child neglect action. Moreover, their proposal to adopt J.F.K. is different from the "subject of the action"the determination of "the current fitness of the natural mother," and, we might add, the determination of whether reunification with the mother is in the child's best interests.[5]
In sum, we hold that prospective parents have no right to intervene in a chapter 211 proceeding either for the purposes of terminating the parental rights of the natural parent(s) and adopting the minor child or for the purpose of presenting evidence of the natural parent(s)' unfitness to have custody of the child.

IV.
The judgments are affirmed.
All concur.
NOTES
[1] Section 211.031.1 provides, inter alia, that the juvenile division shall have exclusive jurisdiction over any minor child who may be "(1) ... in need of care and treatment because ... (a) The parents ... neglect or refuse to provide proper support, education which is required by law, medical, surgical or other care necessary for his wellbeing...."
[2] DFS did not comply with the requirements of § 210.760, RSMo 1986, in that it failed to give the Randles five-days notice and an explanation to which the Randles, as foster parents, were entitled. However, the failure to do so has no significance in the case before us.
[3] Judge Charles Sloan heard the chapter 211 case, but he was disqualified by the Randles in the adoption proceeding. Thereafter, Judge Patrick Robb was assigned to the adoption case.
[4] Section 211.447 was amended by H.B. 1370, 1037, 1084, § A. The amendment added reference in subsection 2 to termination of parental rights by a prospective parent and added a new subsection 5. Other changes not pertinent to this case were also made. Section 211.447, RSMo Supp.1992.
[5] Foster parents do have input to the court, short of intervention. Section 211.464, RSMo 1986 provides:

Where a child has been placed with a foster parent, with relatives or with other persons who are able and willing to permanently integrate the child into the family by adoption, if the court finds that it is in the best interests of the child, the court may provide the opportunity for such foster parent, relative or other person to present evidence for the consideration of the court.
See also, § 211.447.1, RSMo Supp.1992.