55 S.W.3d 889 (2001)
In the Matter of C.M.B., a minor.
K.R.C. and C.F.C., Petitioners-Respondents,
v.
M.W.B., Respondent-Appellant.
No. 23810.
Missouri Court of Appeals, Southern District, Division Two.
September 26, 2001.
*891 Lisha A. Masters, Pratt & Fossard, Springfield, for Appellant.
*892 Donald G. Cheever, Marshfield, for Respondent.
PHILLIP R. GARRISON, Presiding Judge.
M.W.B. ("Father") appeals the judgment of the Webster County Circuit Court terminating his parental rights to his minor son, C.M.B., and granting the petition of K.R.C. ("Mother") and her husband, C.F.C., for his adoption. Father claims that the trial court erred in finding the two grounds for adoption relied on by it. We affirm.
There was evidence concerning two incidents involving C.M.B. while in the care of Father. One occurred on November 25, 1995, when C.M.B. was approximately two months old. In that incident, Father said that he shook C.M.B. because he had stopped breathing. When taken to the hospital, C.M.B. was in critical condition with blood behind the eyes and a subdural hematoma. The attending physician believed that C.M.B.'s condition was the result of "shaken baby impact syndrome." Although the incident was reported to the Division of Family Services ("DFS"), and an investigation was conducted, C.M.B. was released to his parents upon discharge from the hospital.
The other incident occurred in July 1996. On that occasion, Father was giving C.M.B. a bath in a plastic tub designed for infants when Mother heard C.M.B. crying. When she investigated, Father said he "had it under control." The next morning, Mother noticed that C.M.B. had a swollen arm and took him to the hospital even though Father discouraged that. X-rays revealed a spiral fracture of his upper left arm, a healing or healed fracture at the base of the skull, and a healing fracture of one of his legs. The attending physician testified that spiral fractures are rarely caused by falls, but are usually the result of an adult's grip on the arm, and that fractures of that nature are considered a very strong sign of physical abuse. Father first said that he did not know what happened to C.M.B., but later said that C.M.B. started to slip out of his hands when he was being bathed and that he heard something pop but thought nothing about it.
When C.M.B.'s injuries were discovered in July 1996, he was placed in foster care with Mother's parents. Mother was also then living with her parents at that time, having separated from Father. C.M.B. was returned to Mother approximately five weeks later. Father was granted supervised visits in October 1996, but did not begin exercising them until December. After exercising three visits with C.M.B., the last of which was January 2, 1997, Father's visitation privileges were terminated, but the record does not demonstrate the reason or procedure followed to that end other than the fact that it was the result of an order of protection.
Father was later charged with two felony offenses of endangering the welfare of a child relating to the two incidents involving injuries to C.M.B. Those charges were later amended to two Class A misdemeanor charges, to which he pleaded guilty on November 13, 1996, and was sentenced to a term of one year in jail on each of them. Execution of those sentences was suspended and he was placed on two years probation on each.
At some point Mother filed a dissolution of marriage action, although the exact time of that filing is not demonstrated in the record here. The dissolution action was concluded in March 1998 as the result of a settlement agreement between the parties. According to the testimony, Father's attorney was involved in a conference with the judge in whose court the dissolution action was pending, and reported to Father that *893 it would be best to enter into an agreement rather than having the judge decide the case after a trial because he thought that Father "could do worse potentially than what we could negotiate." According to Father, that is the reason he agreed to a settlement that provided that he would have no visitation with C.M.B. The judgment entered in the dissolution action provided that Mother would have sole legal and physical custody of C.M.B., that "it would be in the best interest of the minor child that [Father] be awarded no visitation at this time," and Father's mother [paternal grandmother] was awarded specific visitation with the proviso that if Father was there, all contact would terminate. The grandmother's visitation was to be supervised so long as Father lived in Missouri; would become unsupervised when Father moved to Illinois, a move that was apparently anticipated; and she was ordered not to allow Father to visit or be in the vicinity of C.M.B.
Following the dissolution of marriage, both Father and Mother remarried. Mother and her new husband, C.F.C., filed a petition to adopt C.M.B. together with a petition to terminate Father's parental rights. In its judgment, the trial court found the following as grounds for the termination of Father's parental rights:
1. [Father] has violated the conditions of 211.447 RSMo by the criminal convictions, supra, in which he entered pleas of guilty.
2. [Father] has willfully abandoned and willfully neglected his child for over 40 months. [Father] agreed to the `no contact' provision as a part of the dissolution process in essence withdrawing the normal bonding process of a father and son.
The trial court entered judgment terminating Father's parental rights and ordering the adoption of C.M.B. It is from this judgment that Father appeals.
The appellate court must affirm the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. In re Adoption of W.B.L., 681 S.W.2d 452, 454 (Mo.banc 1984). In a parental rights termination case, "substantial evidence," as the term is used in the above standard of review means "clear, cogent, and convincing evidence." In re Marriage of A.S.A., 931 S.W.2d 218, 222 (Mo.App. S.D.1996). The clear, cogent and convincing standard of proof is met when the evidence "instantly tilt[s] the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true." Id. Accordingly, this standard of proof may be met although the court has contrary evidence before it. Id. Likewise, evidence in the record, which might have supported a different conclusion, does not necessarily demonstrate that the trial court's determination is against the weight of the evidence. Id. at 222-23.
In the first of Father's two points on appeal, he contends that the trial court erred in terminating his parental rights based upon Section 211.447[1] because his two criminal convictions were misdemeanors and not felony violations of Chapter 566 or Section 568 .020. It is not necessary, however, to discuss that point, because we hold that there was sufficient evidence to support the other finding of the trial court that Father had willfully abandoned and neglected C.M.B. "[I]n a termination of parental rights proceeding, one of the grounds for termination, if adequately pleaded and proved, is sufficient to *894 support termination." In re N.M.J., 24 S.W.3d 771, 777 (Mo.App. W.D.2000)
In Father's second point, he contends that the trial court erred in terminating his parental rights for "abandonment/neglect" because the overwhelming weight of the evidence does not support that finding. He argues that he had provided financial support through court-ordered child support,[2] he maintained regular contact with C.M.B. through his parents even though he submitted to a no-visitation provision in the dissolution action, and he never had an intention to relinquish his rights as a parent.
Consent of the natural parent or involuntary termination of their parental rights is a prerequisite to any adoption. Matter of J.F.K., 853 S.W.2d 932, 934 (Mo. banc 1993). Among other grounds, consent need not be obtained from:
A parent who has for a period of at least six months, for a child one year of age or older, ... immediately prior to the filing of the petition for adoption, willfully abandoned the child or, for a period of at least six months immediately prior to the filing of the petition for adoption, willfully, substantially and continuously neglected to provide him with necessary care and protection.
Section 453.040(7). The terms "abandonment" and "neglect" are used in the disjunctive and therefore either ground, if supported by substantial evidence, will support an adoption. See Matter of Adoption of Pearson, 612 S.W.2d 30, 35 (Mo. App. W.D.1981).
The terms "neglect" and "abandonment" embody different, but not mutually exclusive concepts. In re Marriage of A.S.A., 931 S.W.2d at 221-22. "Neglect" focuses on physical deprivation or harm, and has been characterized as a "failure to perform the duty with which the parent is charged by the law and by conscience." Id. at 222. "Neglect" is ultimately a question of an intent to forego "parental duties," which includes both an obligation to provide financial support for a minor child, as well as an obligation to maintain meaningful contact with the child. I.D. v. B.C.D. 12 S.W.3d 375, 377 (Mo.App. S.D. 2000). "Abandonment" is defined as the voluntary and intentional relinquishment of custody of the child with the intent to never again claim the rights or duties of a parent, or, the intentional withholding by the parent of his or her care, love, protection and presence, without just cause or excuse. Id. at 378.
In both neglect and abandonment the issue turns on intent, which generally is an inferred fact, determined by conduct within the statutory period, combined with relevant conduct both before and after this period. C.B.L. v. K.E.L., 937 S.W.2d 734, 737 (Mo.App. E.D.1996). Proof of intent must be shown by clear, cogent and convincing evidence. Id.
In this case, the trial court found that Father had agreed to have "no contact" with C.M.B., the "result of which was a voluntary abandonment/neglect of the love, affection, bonding that a child should be entitled to receive from his father." It also found that Father's actions also resulted in a spiral fracture of his arm and a subdural hematoma.
*895 Father argues that the relinquishment of contact with C.M.B. was not intentional, and that he did not intend for it to be permanent. The judgment was entered in this case in July 2000, and the evidence indicated that Father had not seen C.M.B. since January 1997. We are not directed to any portion of the record indicating what, if any, efforts Father may have made to see C.M.B. after that time other than his contention that he contacted an attorney approximately a month before the adoption case was filed. There are vague references to protective orders, but no indication whether Father opposed them, or if so, to what extent.
Father contends that when he agreed, in settling the dissolution case, to have no visitation with C.M.B., he did not intend for it to be permanent. In support, he points to the fact that the decree in that case provided that he was awarded no visitation "at this time," in arguing that he did not intend to permanently abandon C.M.B. That, however, was the judgment of the dissolution court and does not reflect a statement by Father. In fact, the settlement agreement which preceded the decree in that case is not before us. Again, there was also no evidence of any effort by Father to obtain visitation with C.M.B. between the dissolution decree on March 10, 1998, and the trial of this case which concluded in May 2000 other than testimony that Father had consulted an attorney a month before the filing of the suit for adoption.
It is true that abandonment is generally not compatible with a case where custody has been taken from a parent involuntarily by court order. In Interest of D___L___C___, 834 S.W.2d 760, 770 (Mo.App. S.D.1992). Here, there apparently were some initial court orders that Father not have visitation with C.M.B, but substantial periods of time elapsed between then and Father's agreement to settle the dissolution case in such a way that he would not have visitation with his son. Likewise, there was also a substantial period between the dissolution decree and trial of this case without significant or meaningful effort by Father to establish visitation with C.M.B.
In In re Adoption of H.M.C., 11 S.W.3d at 87, the court said:
Abandonment can also occur if a parent intentionally withholds from the child without just cause or excuse the care, love, protection and presence of a parent. A transfer of custody for any reason may ripen into abandonment if the absent parent foregoes the performance of the functions of a parent which demonstrate the continued intent to exercise the rights and duties of a parent. Whatever the genesis for the transfer or relinquishment of custody, abandonment may result if the parent manifests the intent to abandon by subsequent conduct. (citations omitted.)
Father argues that he tried to stay in communication with C.M.B. by furnishing gifts and cards to his mother who was exercising her visitation with C.M.B. Parents, however, are not allowed to maintain only a superficial or tenuous relationship with their child in order to avoid a determination of abandonment, and courts may regard such efforts as token and terminate parental rights despite their existence. In Interest of M.N.M., 906 S.W.2d 876, 879 (Mo.App. S.D.1995).
We are to defer to the trial court's determination of credibility and to its resolution of conflicts in the evidence. In re Adoption of H.M.C., 11 S.W.3d at 86. The facts and reasonable inferences therefrom are reviewed in the light most favorable to the trial court's order. Id. The evidence and permissible inferences favorable to the judgment are accepted as true *896 and all contrary evidence and inferences are disregarded. Id. On appeal of a courttried case, the appellate court defers to the trial court on factual issues because it is in a better position not only to judge the credibility of witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record. Id. at 86-87. The trial court is in an especially advantageous position to determine the intent of a parent-witness in an adoption case. Id. at 87. "Greater deference is granted to a trial court's determination in custody and adoption proceedings than in other cases." I.D. v. B.C.D., 12 S.W.3d at 376.
Under the applicable standard of review and evidence in this case, the trial court did not err in finding that Father abandoned or neglected C.M.B. as authorized under Section 453.040.7.
The judgment of the trial court is affirmed.
PARRISH, J., and RAHMEYER, J., concur.
NOTES
[1] All references to statutes are to RSMo 2000, unless otherwise indicated.
[2] Father was also ordered to pay child support of $300 per month beginning April 1, 1998. This was a reduction from $400 per month he had been ordered to pay prior to trial as the result of an administrative order. Because of Father's arrears, an administrative order and a wage withholding was issued to enforce the earlier order. According to Father's testimony, he agreed, at the time of the dissolution, that the wage withholding would continue as to the child support ordered in the decree. He said that this was partly because of convenience.