**Tracy Marie USSERY, Plaintiff–Respondent,**

**v.**

**Mark Ellis USSERY, Defendant–Appellant.**

No. 26219.

Missouri Court of Appeals,
Southern District,
Division Two.

March 3, 2005.

Richard L. Anderson, Branson West, for Appellant.

No appearance for Respondent.

JOHN E. PARRISH, Presiding Judge.

Mark Ellis Ussery (appellant) and Tracy Marie Ussery (respondent) each filed motions to modify provisions of the judgment that dissolved their marriage. Respondent also filed a motion identified on the trial court's docket sheet as "[Respondent's] Motion for Contempt and Request for Order to Show Cause."[1] The trial court denied both motions to modify the dissolution judgment, but entered judgment for respondent in the amount of $3,737.36 stating that the motion for contempt was "otherwise overruled."

This appeal is directed to the judgment that denied appellant's motion to modify the maintenance and child support awards in the parties' dissolution judgment and the judgment awarding money damages that appears to be directed to respondent's request to hold appellant in contempt. The judgment is affirmed with respect to the determination of the parties' motions to modify the dissolution judgment. The judgment with respect to the respondent's contempt motion is reversed. The case is remanded to the circuit court with directions.

The parties' marriage was dissolved March 16, 2001. They were awarded joint legal and joint physical custody of the two children born of the marriage. Appellant was ordered to pay support in the amount of $431 per month for the younger child. No provision was made for payment of child support for the older child. The dissolution judgment noted that the older child had turned eighteen and dropped out of an education program in which he had previously been enrolled. The dissolution judgment awarded respondent modifiable maintenance of $1,000 per month.

Appellant's motion to modify the dissolution judgment alleged there had been substantial changes of circumstance since the dissolution of the marriage. He requested the trial court to "terminate or decrease maintenance awarded the [respondent]." Respondent filed a counter-motion to modify the dissolution judgment in which she alleged changes of circumstance since the dissolution of the marriage and requested the trial court to award her sole custody of the parties' minor children with visitation granted to appellant. She requested the

1. The record on appeal filed in this court does not include this pleading.

trial court "to find that the prior Final Judgment is unreasonable as it relates to the custody and support of the parties' minor children and the maintenance of [respondent]" and to grant her sole custody of the parties' minor children and for appellant to be granted visitation rights with them. Respondent also requested the trial court to award her attorney fees.

The trial court denied each party's motion to modify. The judgment stated, however, "Judgment in the amount of $571.50 and $3,165.86 for a total of $3,737.36 is granted in favor of [respondent] and against the [appellant]. [Respondent's] Motion for Contempt is otherwise overruled."

### The Trial

The modification judgment denied both motions to modify the dissolution judgment, yet entered money judgment for respondent and against appellant in the amount of $3,737.36. This court infers from the language in the part of the judgment that entered that award that the award resulted from respondent's motion for contempt.

When this case was called for trial on October 15, 2003, the trial judge announced, "This is the Circuit Court of Stone County, Division 1. Today's date is October 15, 2003. We're here today in the matter of In Re: the Marriage of Tracy M. Ussery and Mark E. Ussery, Case No. CV500–306DR." The trial judge stated that appellant had filed a motion to modify "in June of 2002"; that an answer and counter-motion had been filed and that the case "now comes on for hearing." The trial judge announced the appearances of the parties and their attorneys and trial commenced. The attorneys announced ready for trial. The docket entry states that the parties appeared with counsel; that trial was had and "evidence adduced on Motions to Modify & Motion For [sic] Contempt." Notwithstanding the reference to the motion for contempt in the docket entry, this court has found no adjudication in the record that defendant was or was not found to be in contempt.

■ Regardless, it is appropriate to note that issues concerning allegations of contempt are distinct from a trial of motions to modify a dissolution judgment. A contempt hearing may be consolidated with the trial of a motion to modify for purposes of receiving evidence; however, they are separate proceedings for purposes of appeal. *In re Marriage of Crow and Gilmore,* 103 S.W.3d 778, 783 (Mo. banc 2003). Although no pronouncement was made that the motion for contempt was consolidated with the trial of the parties' motions to modify their dissolution judgment, that appears to have occurred. The issues related to each type of proceeding will be addressed separately.

### Denial of Appellant's Motion to Modify

■ At the time of the dissolution of the parties' marriage, appellant was working as a union boilermaker. He worked as a robotic welder at locations throughout the United States and in other countries for a welding specialty services contractor. He would either fly or drive to his job locations. The trial court found that appellant's earnings for the four years preceding 2003 were $66,039 in 1999, $67,870 in 2000, $80,317 in 2001, and $69,174 in 2002. At the time of trial on October 15, 2003, the trial court found that appellant had earned only $11,083.17 for that year.

The trial court's findings in the judgment include:

> [Appellant] attributed the drastic reduction in earnings for 2003 principally to two causes, first the progression of his diabetes which [appellant] said was

worse than in prior years, causing him problems with vision and dizziness, and secondly, to his loss of operating privileges, which prevented him taking jobs when called.[2] This Court finds that the progression of his diabetes had minimal effect upon his earnings ability, but the loss of his operator's license was significant. However, this Court also is not convinced by the evidence that this circumstance (loss of license) prevents [appellant] from taking job assignments or seeking other employment utilizing his skills.

The trial court concluded that although the loss of appellant's driver's license impaired his ability to work, appellant could do more to improve his employment prospects. It concluded that appellant was voluntarily underemployed; that appellant's change in employment circumstances did not warrant modification of the dissolution judgment.

■■■ Point I argues that the trial court erred in finding appellant was voluntarily underemployed and by denying his request to lessen the amounts of child support and maintenance he is required to pay; that the trial court finding was against the weight of the evidence. Maintenance or child support obligations may be modified only upon showing changed circumstances so substantial and continuing as to make the terms of the original award unreasonable. § 452.370.1[3]; *Draper v. Draper*, 982 S.W.2d 289, 291 (Mo.App. 1998). A party who seeks modification of an award of child support or maintenance must prove with detailed evidence that circumstances have changed so substantially that the prior decree is unreasonable. *Id.* Voluntary unemployment, or underemployment, is not a substantial and continuing change of circumstances warranting modification of either an order to pay maintenance or support. *Eaton v. Bell*, 127 S.W.3d 690, 695–97 (Mo.App.2004).

Appellant described diabetes symptoms he claimed made work difficult. He was asked whether diabetes affected his ability to take jobs in 2002 and responded that he "took them whether [he] was able to take them or not"; that "[he] didn't refuse anything." With respect to the effect the loss of his driver's license had on his employment possibilities, the trial court concluded the evidence was not sufficient to support appellant's claim that he could not take job assignments or seek other employment where he could use his welding skills.

■■■ A person's failure to use his or her best efforts to obtain new employment may result in a finding that the individual was voluntarily underemployed. *State ex rel. Stirnaman v. Calderon*, 67 S.W.3d 637, 640–41 (Mo.App.2002). Appellant did not offer evidence of efforts made to obtain employment, but relied on his loss of license and physical disability for his decrease in income. The trial court assessed the evidence and concluded appellant's diabetes did not prevent him from obtaining suitable employment. It observed that no evidence was presented concerning availability, or lack of availability, of alternate transportation that would permit appellant to secure suitable employment. Appellate courts defer to trial judges' assessments of

2. Evidence was presented that appellant lost his driver's license and his fishing and hunting licenses for failure to pay child support. *See* § 454.1003.1(1), RSMo 2000. The trial court suggested that the suspension of appellant's license likely worked a disservice on appellant, respondent and their children; that enforcement of § 454.1003.1(1) in instances such as these may impair an obligor's ability to maintain skilled employment so as to be a detriment to children and parents.

3. References to statutes are to RSMo 2000 unless otherwise stated.

witness credibility and in weighing the evidence presented at trial. *In re C.M.B.*, 55 S.W.3d 889, 895–96 (Mo.App.2001). Facts and reasonable inferences are reviewed in the light most favorable to the determination of trial court. *Id.* at 895. Appellant did not present detailed evidence that supported his claim of change of circumstances with respect to his employment abilities. The trial court finding that appellant was voluntarily underemployed was not an abuse of discretion. Point I is denied.

■ Point II alleges that the trial court erred in denying appellant's request to modify maintenance because the evidence was that appellant could not meet both his essential needs and pay the amount of maintenance and child support ordered by the dissolution judgment. In a modification proceeding, a trial court may, but is not required to, consider the ability of the spouse paying maintenance to meet his or her own needs while meeting those of the spouse who receives maintenance. *Brooks v. Brooks*, 957 S.W.2d 783, 786 (Mo.App.1997), citing *Smith v. Smith*, 632 S.W.2d 91 (Mo.App.1982). In *Smith* the husband complained that the trial court erred in not following the guidelines of § 452.335, RSMo 1978, in determining a modification of maintenance. The requirement that appears as § 452.335.2(8) in the present revision of the statutes was present in the 1978 revision. It states that a relevant factor to be considered in initially setting maintenance is "[t]he ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance." *Smith* stated that although the trial court considered that factor in determining modifica-

tion of maintenance, there was no requirement for it to do so. *Id.*

■ In a proceeding for modification of maintenance, "[i]f a spouse is entitled to maintenance, then the only determination is the reasonableness of the amount." *Brooks, supra.* The trial court found respondent's monthly gross income, including the $1,000 maintenance she receives, was $2,200. She receives an additional $431 per month child support for the parties' younger child. Respondent's monthly expenses exceeded her gross monthly income by approximately $100 when the $1,000 monthly maintenance and the $431 child support are included in the calculation of her monthly income. The trial court did not abuse its discretion in determining that the $1,000 monthly maintenance respondent was receiving was reasonable and denying appellant's request to reduce that amount. Point II is denied.

■ Point III argues that the trial court erred "in failing to consider the extent to which the expenses claimed by respondent included expenses of the parties' adult child." Appellant argues that he was not obligated to support his adult child and his "obligation to pay maintenance should be based upon the financial condition of the parties and not that of the parties' emancipated child."

At the time of the dissolution of the parties' marriage, their older son, Mark, was living with respondent. He was then over the age of 18, not physically or mentally incapacitated, and not enrolled in and attending a secondary school program or an institution of vocational or higher education. He was, therefore, emancipated.[4] The trial court that heard the motions to

---

4. The dissolution judgment stated he was "temporarily emancipated," a term unknown to this court.

815

modify likewise found the older son was emancipated.

■ Because the older son was living with respondent at the time of the dissolution of the parties' marriage and was living with respondent at the time of the trial of the motions to modify the dissolution judgment, there was no change of circumstance that warranted modification. "To warrant modification, the change in circumstances must involve a departure from prior known conditions, including those known at time of dissolution." *Shanks v. Shanks,* 117 S.W.3d 718, 721 (Mo.App.2003). Point III is denied. The judgment denying appellant's and respondent's motions to modify the dissolution judgment will be affirmed.

### Motion for Contempt

■ The judgment denied both motions to modify the dissolution judgment. Those motions and the motion for contempt, as recognized by the trial court's October 15, 2003, docket entry, are the pleadings on which the cases were tried. Having denied the motions to modify in their entirety, and having granted respondent relief in the part of the judgment entered March 15, 2004, stating, "Judgment in the amount of $571.50 and $3,165.86 for a total of $3,737.36 is granted in favor of [respondent] and against the [appellant]. [Respondent's] Motion for Contempt is *otherwise* overruled," this court is left to speculate regarding a theory on which money judgment was entered.[5] (Emphasis added.)

Appellant's Point IV contends the trial court erred in its entry of the money judgment; that no evidence was adduced that

supported the award. The trial court having denied the motions to modify, it appears to this court that the only issues before the court were those to which the motion for contempt was directed.

■ A civil contempt proceeding is directed to a party for whom a prior order, judgment, or decree was entered. *In re Marriage of Crow and Gilmore,* 103 S.W.3d at 780. "'Its purpose is to coerce compliance with the relief granted.'" *Id.,* quoting *State ex rel. Chassaing v. Mummert,* 887 S.W.2d 573, 578 (Mo. banc 1994). As best this court can glean from the record before it, the contempt proceeding in this case sought a civil contempt remedy. There is no pronouncement in the record before this court that would cause it to conclude that respondent sought punitive relief; rather what appears to have been sought is enforcement of rights granted respondent in the original dissolution judgment; to coerce payment of certain amounts respondent claims were due her from appellant by reason of the dissolution of marriage judgment.

■ Upon entry of a civil contempt order, a contemnor has the opportunity of purging himself of the contempt by compliance with relief that has been granted. *Id.* Or, the contemnor may appeal the civil contempt order when it is "enforced." *Id.* at 781. "When 'enforcement' occurs depends on the remedy. Two remedies to coerce compliance are compensatory *per diem* fines and imprisonment." *Id.* Because no finding of contempt appears in the record on appeal, nor is a remedy directed to coerce compliance with the trial court's prior order, judgment or decree,

---

5. This case was tried October 15, 2003. On that date the trial court noted, "Case taken under advisement until the parties file proposed Judgments as directed." The trial judge announced at the end of the presentation of evidence on that date, "And what we'll do is, I'll deem this case submitted upon the filings of the proposed judgments by each party. At that time, I'll deem the case submitted and take it under advisement formally...."

the legal basis for the money judgment recited in the judgment is ambiguous and inconsistent with a proceeding for civil contempt. The trial court findings do not identify with any degree of particularity the legal basis for formulation of the money judgment. "An appellate court cannot rule on issues formulated on inconsistent and ambiguous findings." *Main Street Feeds, Inc. v. Hall,* 975 S.W.2d 227, 234 (Mo.App.1998).

The money judgment that is part of the judgment in the contempt proceeding must be reversed. The case will be remanded with directions that the trial court review the question of whether appellant's conduct was contumacious and, if it so finds, to state in what manner that conduct was contumacious and to fashion an appropriate remedy under the circumstances of this case. It is left to the sound discretion of the trial court whether to consider this matter on the basis of the record heretofore made or to permit the parties to offer additional evidence.

### Dispositions

The judgment denying the motions to modify the prior dissolution judgment filed by each appellant and respondent is affirmed. The money judgment is reversed and the contempt proceeding remanded for review pursuant to the terms of this opinion.

SHRUM and BARNEY, JJ., concur.