**Melinda Mae MAYBEN, Respondent**

v.

**Daric Karl GARREN, Appellant.**

**No. SD 29072.**

Missouri Court of Appeals,
Southern District,
Division Two.

June 9, 2009.

James R. Sharp, Sharp & Bredesen, Springfield, MO, for appellant.

W. Henry Johnson, Neosho, MO, for respondent.

JOHN E. PARRISH, Judge.

Daric Karl Garren (father) appeals the modification of a dissolution of marriage judgment. He contends the trial court erred in determining the amount of child support it ordered him to pay and in ordering that he pay attorney fees for his former wife, Melinda Mae Mayben (mother). This court affirms.

This court's review is undertaken in accordance with Rule 84.13(d). The judgment of modification will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Keller v. Keller*, 224 S.W.3d 73, 76 (Mo.App.2007).

· Mother sought modification of the parties' March 12, 1999, Judgment of Dissolution of Marriage. She sought modification of child support and custody with respect to the parties' daughter, whose date of birth is February 22, 1995. She also sought, in a separate action, declaration of paternity and support for a second daughter born November 17, 1999. The actions were consolidated.

The trial court declared the second child to be the child of father and awarded the parties joint legal custody and joint physical custody of both children.[1] Father was ordered to pay child support of $900 per month and to pay $3,000 toward mother's attorney fees.

Father's first point on appeal contends the trial court used an incorrect income figure in calculating the amount of child support he was ordered to pay. Father argues that the amount the trial court used for his gross monthly income for purposes of determining presumed child support ($4,263) was not based on substantial evidence; that it was based on only one year, 2005, of his reported earnings from his backhoe business, which was an unusually good year. He contends that he could not expect this amount of income from the backhoe business in future years. He further argues that the trial court failed to exclude losses from his horse breeding business and failed to deduct business depreciation expense from the income he received from his backhoe business.

The trial court adopted and accepted the form prepared by mother as its Form 14 calculation. The gross monthly income of $4,263 is based on an annual income of $51,155.[2]

The most recent federal income tax return father had filed prior to mother filing her motion to modify was his 2005 return. Father reported gross receipts from his backhoe business of $88,365. He deducted business expenses in the amount of $51,210 and arrived at a net profit of $37,155. The business expenses included a $14,000 deduction for depreciation. That amount, added to the net profit calculation of $37,155 on Schedule C of father's original tax return for 2005, totals $51,155, the amount the trial court used to calculate father's average monthly income.

A trial court may use a party's tax returns in determining the party's income for purposes of calculating child support awards. *Baker v. Welborn*, 77 S.W.3d 711, 722 (Mo.App.2002); *Bauer v. Bauer*, 28 S.W.3d 877, 888 (Mo.App.2000). The court, however, is not required to adopt the determination of income for income tax

---

1. The parties reconciled following the dissolution of their marriage and began living together. The second daughter was born during that time. The parties separated again in 2002.

2. Average monthly income based on an annual income of $51,155 would be $4,262.92 or, rounded to the nearest dollar, $4,263.00.

purposes as its determination of income for purposes of calculating presumed child support. "Form 14 allows the trial court the necessary flexibility to determine a parent's income for the purposes of fixing child support in light of what the court has discovered during proceedings on the matter." *Klockow v. Klockow,* 979 S.W.2d 482, 491 (Mo.App.1998).

Father's complaints about the trial court's use of his 2005 tax return include the trial court's failure to deduct the depreciation expense he claimed on the return from his backhoe business income, and the trial court's failure to deduct a loss he claimed on an equipment sale. Directions for Form 14 allow a trial court to exclude depreciation in calculating a parent's income. *In re Marriage of Glueck,* 913 S.W.2d 951, 956 (Mo.App.1996). Depreciation expense is a non-cash deduction. Gross income for child support purposes may differ from what is calculated as business income for tax purposes. *Klockow, supra.* The trial court did not abuse its discretion by not deducting the depreciation father claimed as a deduction from his backhoe business income on his 2005 tax return. Neither did the trial court abuse its discretion in not deducting father's reported loss from the equipment sale. The equipment sale was a sale of a capital asset. It did not result in a cash outlay in 2005, but was the result of father having sold an asset for less than its depreciated book value. As explained in *Glueck, supra,* a trial court may exclude non-cash deductions in determining a parent's income for purposes of calculating child support.

Father also complains that the trial court did not deduct a loss he contends he incurred in a horse breeding business partnership. It is a partnership with his mother. It is referred to as Diamond G Farms LLC. Father's attorney referred him to an accountant who prepared an amended tax return for 2005 (as well as doing other work for father). The amended return reflected a loss from the partnership in the amount of $22,230. It was not included on father's original 2005 tax return. It was prepared after mother filed her motion to modify that is the subject of this appeal.

Father contributed $66,850 to Diamond G Farms at its inception. His partner, father's mother, did not contribute capital to the partnership the year of its inception. Additional horses were purchased in later years. One of the horses that was purchased cost "in the neighborhood of 125 or $130,000." There was evidence that at the end of 2006, the horses Diamond G Farms owned had cost the partnership $218,350. Diamond G Farms had claimed depreciation on the horses in the amount of $78,438. Defendant's accountant, who testified concerning the book value of the horses, was asked about the fair market value of Diamond G Farms' horses. He was unable to provide evidence of their fair market value.

There was evidence that Diamond G Farms had notes payable of $95,000 at the end of 2006. During the first eight months of 2007, it had paid over 25% of that debt. The evidence was sufficient for the trial court to conclude that Diamond G Farms was earning adequate funds to meet its operating needs, notwithstanding reporting a loss for income tax purposes. This court defers to the trial court in weighing the evidence presented at trial. *Ussery v. Ussery,* 156 S.W.3d 810, 814–15 (Mo.App.2005). The trial court did not abuse its discretion by not considering father's reported tax loss from Diamond G Farms in calculating his income for purposes of determining presumed child support.

Point I further asserts that the trial court "improperly included income attributable to [father's] present wife" as fa-

ther's income for purposes of calculating presumed child support. Father produced copies of amended tax returns for 2004 and 2005 at trial. The amended returns attributed $13 per hour for periods of time that father contends his present wife worked in his backhoe business. This amount was used to reduce the income that was shown on the original 2005 tax return father filed.

■ The trial court was free to discredit the calculation that attributed part of the backhoe business to work performed by father's present wife. The trial court did not impute income to father's present wife. Rather, it relied on and found credible the calculation of father's earning as reported on the 2005 tax return he originally filed.

■ The trial court was free to believe, based on the evidence before it, that the revenues father's backhoe business produced in 2005 could be earned in future years by father using his best efforts suitable to his capabilities. *See Wright v. Wright*, 975 S.W.2d 212, 214 (Mo.App. 1998). There was evidence that father could earn $50 an hour for backhoe work using his own equipment, or that he could earn $15 an hour using other equipment. Notwithstanding this evidence, and the fact that father's original 2005 tax returned showed that father could earn the substantial income the trial court attributed to him, father submitted Exhibit G, a "Monthly Income and Expenses" exhibit. It reported "[t]otal monthly income w/horse losses" of $680. It reported monthly expenses of $4,659 that resulted in a "[s]hortfall" of $3,394.

Obviously, the trial court did not find father's Exhibit G to be credible evidence. "A trial court is in the best position to assess the credibility of the parties and other intangibles that are not completely revealed by the record on appeal." *In re Marriage of Pobst*, 957 S.W.2d 769, 772 (Mo.App.1997). "Appellate courts defer to

trial judges' assessments of witness credibility and in weighing the evidence presented at trial." *Ussery v. Ussery, supra.* Point I is denied.

■ Point II argues that the trial court erred in awarding mother an allowance toward her attorney fees of $3,000; that there was no evidence that father's financial situation was so superior to mother's that he could afford to pay that award. There was evidence that mother earns $7.00 an hour working part-time at Dollar Tree; that she earns $200 a month cleaning houses; and that she receives proceeds from a promissory note of $160 a month. Mother testified that she had a monthly income of $670.

Section 452.355.1, RSMo 2000, permits the trial court to order a party to pay a reasonable amount for the cost to the other party of maintaining or defending this type of action, including payment of attorney fees. It directs a court considering doing so to consider "all relevant factors including the financial resources of both parties." The trial court did not abuse its judicial discretion by ordering father to pay the sum awarded for mother's attorney fees. Point II is denied. The judgment is affirmed.

BURRELL, P.J., and RAHMEYER, J., concur.